## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| F.W. WEBB COMPANY, ROBERT A. MUCCIARONE, CHARLES SLATTERY III, and EDWARD WELCH, as members of the F.W. WEBB COMPANY SAVINGS & PROFIT SHARING PLAN COMMITTEE, and THE F.W. WEBB COMPANY SAVINGS & PROFIT SHARING PLAN, on behalf of the Plan and participants thereof, )))))))))))) | |
| Plaintiffs, )) | Civil Action No. |
| v. )) | |
| STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL ADVISORS and CITISTREET, LLC, )))) | |
| Defendants. ))) | |

_____)

## COMPLAINT AND DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.     This action arises from violations by Defendants State Street Bank and Trust Company ("State Street Bank"), State Street Global Advisors ("SSgA") and CitiStreet, LLC ("CitiStreet") (collectively, "Defendants") of their obligations as fiduciaries under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  State Street Bank, SSgA and CitiStreet each acted as a fiduciary with respect to the plan assets Plaintiffs invested in, among other things, the SSgA Yield Plus Fund.

2.      This action also arises from, among other things, Defendants' repeated pattern of fraud, misrepresentation, negligence, unfair and deceptive acts and practices, violations of Massachusetts General Laws c. 93A and violations of the Uniform Securities Act, Massachusetts General Laws c. 110A in connection with the F.W. Webb Company Savings & Profit Sharing Plan (the "F.W. Webb 401(k) Plan" or the "Plan") in general and the SSgA Yield Plus Fund in particular.

3.      As investment advice fiduciaries, Defendants misrepresented and mischaracterized the Yield Plus Fund as tantamount to a money market fund.  Defendants further misrepresented, among other things, the true investment risk of the Yield Plus Fund and failed to disclose the dramatic changes that SSgA implemented in the investment strategy of the Yield Plus Fund between 2000 and 2007.

4.      Although the full extent of Defendants' misconduct has yet to be revealed, Plaintiffs recently discovered that the investment strategy of the Yield Plus Fund, in reality, radically differed from the investment strategy and risk assessment represented by the Defendants to Plaintiffs.  As a result of, among other things, SSgA's mismanagement of the Yield Plus Fund, and CitiStreet's and State Street Bank's failure to disclose such management, Plaintiffs have lost a significant amount of money.  For example, unbeknownst to Plaintiffs, Defendants exposed the Yield Plus Fund to investments in low-quality debt securities, creating an inappropriate level of risk far out of line with the stated investment objectives of the F.W. Webb 401k Plan and those of a traditional money market fund.  During the summer of 2007, the Yield Plus Fund, contrary to its purportedly conservative investment strategy, fell dramatically because of its overexposure to risky, low-quality assets and securities.

2

5.     As fiduciaries of, and on behalf of participants in the F.W. Webb 401(k) Plan, Plaintiffs seek to recover losses to this plan for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).  In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiffs seek other equitable relief from Defendants, including, without limitation injunctive relief as available under applicable law.

6.     ERISA §§ 409(a) and 502(a)(2) authorize ERISA plan participants and plan fiduciaries, such as Plaintiffs, to sue in a representative capacity for losses suffered by the plan as a result of breaches of fiduciary duty.  Pursuant to that authority, Plaintiffs bring this action on behalf of the F.W. Webb 401(k) Plan, and its participants and beneficiaries, who suffered losses due to, among other things, Defendants' gross dereliction of their fiduciary duties under ERISA.

## PARTIES

7.     Plaintiffs are the F.W. Webb Company Savings & Profit Sharing Plan Committee (the "Plan Committee") and individual committee members of the Plan Committee, Robert A. Mucciarone, Charles Slattery III and Edward Welch, who are participants in and have fiduciary responsibilities to oversee the retirement assets of the F.W. Webb 401(k) Plan, F.W. Webb Company ("F.W. Webb") in its role as a fiduciary for the F.W. Webb 401(k) Plan, and the F.W. Webb 401(k) Plan.  The F.W. Webb 401(k) Plan is a tax-qualified plan established for the benefit of employees of F.W. Webb.  As of the end of 2006, the F.W. Webb 401(k) Plan had 1,281 participants whose account balances were worth approximately $100 million.  F.W. Webb is a plumbing, heating, ventilation, air conditioning, and industrial pipe, valve and fitting distributor with a

3

principal place of business located at 160 Middlesex Turnpike, Bedford, Massachusetts. F.W. Webb, the Plan Committee, and its individual members are fiduciaries as defined by ERISA.  They exercise discretionary authority and control respecting the management and administration of the F.W. Webb 401(k) Plan and the disposition of the F.W. Webb 401(k) Plan's assets.  Additionally, the Plan Committee members individually are plan participants who, as employees, are or may become eligible to receive a benefit from the F.W. Webb 401(k) Plan.  F.W. Webb, as a fiduciary, the Plan Committee, as a fiduciary, and the individual Plan Committee members as plan fiduciaries, participants and beneficiaries are authorized under ERISA §§ 409(a), 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), to file suit in a representative capacity for losses suffered as result of Defendants' ERISA violations.

8.      Defendant State Street Bank and Trust Company ("State Street Bank") is a wholly owned subsidiary of State Street Corporation, a publicly registered financial holding company.  State Street Bank is a trust company organized under the laws of the Commonwealth of Massachusetts, with its principal place of business at State Street Financial Center, One Lincoln Street, Boston, Massachusetts.

9.      Defendant State Street Global Advisors ("SSgA"), a wholly-owned subsidiary of State Street Corporation, is a Delaware corporation with its principal place of business at State Street Financial Center, One Lincoln Street, Boston, Massachusetts. SSgA has described itself both as "a division" of State Street Bank and as the "investment arm" of State Street Corporation.  Upon information and belief, SSgA or one of its affiliates is registered with the Security Exchange Commission as an investment advisor for the SSgA Yield Plus Fund.  On or about April 1, 2008, the Board of Directors

for the SSga Yield Plus Fund decided to liquidate the SSgA Yield Plus Fund as of May

31, 2008.  At the time of its liquidation, the SSgA Yield Plus Fund was considered to be

an ultra-short, fixed-income bond fund.  Prior to its liquidation, the SSgA Yield Plus

Fund was benchmarked against, and its strategy was to match or somewhat exceed the

return of, the LIBOR-BBA London Index 90-day.  At times relevant to this action, SSgA

acted as an investment advice fiduciary as that term is contemplated by ERISA §

3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii).

10.     Defendant CitiStreet, LLC ("CitiStreet") was a joint venture of Citigroup,

Inc., a Delaware corporation with a principal place of business at 399 Park Avenue, New

York, New York, and State Street Corporation, a Delaware corporation with a principal

place of business at State Street Financial Center, One Lincoln Street, Boston,

Massachusetts.  CitiStreet recently was acquired by ING Group.  CitiStreet purports to be

a premier global benefits provider, and one of the country's largest retirement plan

service providers.  CitiStreet's services include the administration of defined-contribution

retirement savings, pension, health and welfare, and other plans and the provision of

related services, including without limitation recordkeeping and investment advice.

CitiStreet maintains a principal place of business in North Quincy, Massachusetts.  At

times relevant to this action, CitiStreet acted as an investment advice fiduciary as that

term is contemplated by ERISA § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii).

### JURISDICTION

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331

and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).  The Court has supplemental jurisdiction

over the pendent state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## BACKGROUND FACTS

13.     Prior to the fall of 1996, the assets of the F.W. Webb 401(k) Plan were maintained and invested with the BayBank 401K Program.  The specific funds offered by the BayBank 401K Program at that time to participants included Baybank Money Market, Baybank Bond, Baybank Equity, Fidelity Income & Growth, Fidelity Growth Opportunities and Fidelity Overseas.

14.     Sometime in 1996, Plaintiffs learned that BayBank was to merge with the Bank of Boston.  Plaintiffs subsequently were informed that as a result of the merger the BayBank 401K Program also would merge with the Bank of Boston 401K Program.

15.     In or about late 1996, State Street Bank marketed investment management, administrative, recordkeeping, and trustee services to Plaintiffs through State Street Bank and its divisions and/or affiliates, including State Street Solutions and SSgA.  After careful consideration and several interviews and meetings, and based on representations made by representatives of State Street Bank, SSgA and State Street Solutions, Plaintiffs decided that the best direction at that time for the F.W. Webb 401(k) Plan was to move the F.W. Webb 401(k) Plan to State Street Bank.

## A.     Misrepresentations Made by State Street Bank, SSgA and CitiStreet

16.     In or about October or November 1996, Plaintiffs and State Street Bank commenced the process of transferring the F.W. Webb 401(k) Plan to State Street Bank. Notwithstanding the decision to transfer the F.W. Webb 401(k) Plan to State Street Bank, Plaintiffs still were required to address the BayBank and Bank of Boston merger because

such merger was scheduled for November 22, 1996 and the conversion to State Street

Bank would not occur until January or early February 1997.

17.     Plaintiffs, therefore, elected to act conservatively and not allow any of the

assets or investments of the F.W. Webb 401(k) Plan to be transferred into the Bank of

Boston 401(k) Program.  Rather, Plaintiffs directed BayBank to transfer all of the assets

and investments into a money market account at BayBank until the transfer of the F.W.

Webb 401(k) Plan to State Street Bank was completed.  Plaintiffs were advised that this

process was the safest and least volatile course to take until it could complete the

conversion to State Street Bank.

18.     By letter dated November 12, 1996, SSgA informed Plaintiffs of the

procedure by which the assets and investments of the F.W. Webb 401(k) Plan would be

transferred from BayBank to State Street Bank.  SSgA had elected to have BayBank

transfer the funds directly to SSgA's checking account and, upon receipt of the funds,

SSgA then would invest the funds directly into the Yield Plus Fund, which was described

by SSgA as "our money market type investment."  Shortly thereafter, SSgA would

transfer the assets held at the plan level in the Yield Plus Fund to appropriate funds at the

participant level according to the investment elections of the participants.  Plaintiffs did

not object at that time to SSgA's proposal to invest the funds directly into the Yield Plus

Fund based, in part, on State Street Bank's, SSgA's and State Street Solutions'

representations that the Yield Plus Fund was tantamount to a money market fund with a

similar conservative investment strategy.

19.     The F.W. Webb 401(k) Plan historically had made available to

participants a money market fund.  In selecting the investment options for the F.W. Webb

401(k) Plan, Plaintiffs made clear to State Street Bank, SSgA and State Street Solutions, and subsequently to SSgA's and/or State Street Solutions' successor, CitiStreet, that it wanted to include a money market fund as an investment option.

20.     Relying on the Defendants' advice and assistance, Plaintiffs adopted a 401(k) plan that was designed to operate in compliance with ERISA § 404(c).  To comply with ERISA § 404(c), the F.W. Webb 401(k) Plan was required to make available to plan participants a capital preservation investment option.

21.     During the fall of 1996, Plaintiffs participated in several meetings with representatives from State Street Bank, SSgA and State Street Solutions.  Indeed, during this time period, representatives from State Street Bank, SSgA and State Street Solutions made no less than three presentations to Plaintiffs to provide an overview of the performance and characteristics of the investment options offered by State Street Bank. The relevant investment options offered by State Street Bank at that time were called the Seven Seas Funds in general and the Seven Seas Yield Plus Fund in particular.  Upon information and belief, sometime at the end of 1996 or the beginning of 1997, the name of the Seven Seas Yield Plus Fund changed to the SSgA Yield Plus Fund.

22.     During these meetings and presentations, State Street Bank, SSgA and State Street Solutions representatives explained the nature and investment strategy of the possible investment options offered by State Street Bank in general and consistently emphasized the capital preservation objective of the Yield Plus Fund in particular.

23.     While assisting Plaintiffs in selecting appropriate funds for the F.W. Webb 401(k) Plan, State Street Bank, SSgA and State Street Solutions representatives

repeatedly stated to Plaintiffs that the Yield Plus Fund was as stable as a money market fund but would provide better returns.

24.     For example, during a November 1996 meeting attended on behalf of Plaintiffs by, among others, Robert Mucciarone, F.W. Webb's Treasurer / Chief Financial Officer, Mary Mooney, F.W. Webb's Payroll Administrator, and Ellen Antonucci, who at that time was F.W. Webb's Payroll Manager, Bob Quinn and Michael F. Barry from State Street Bank, SSgA and/or State Street Solutions presented investment options for the F.W. Webb 401(k) Plan.  During this meeting Mr. Mucciarone specifically asked the State Street Bank, SSgA and/or State Street Solutions representatives about the Yield Plus Fund in general and about its investment strategy in particular.  Mr. Mucciarone was told that the Yield Plus Fund essentially was a money market fund that would provide better returns.

25.     The State Street Bank, SSgA and State Street Solutions representatives also stated that given Plaintiffs' request to include a money market fund, Plaintiffs would be "crazy" not to select the Yield Plus Fund as an investment option for the F.W. Webb 401(k) Plan because of the slightly higher returns.

26.     During these meetings in the fall of 1996, State Street Bank, SSgA and State Street Solutions provided Plaintiffs with fact sheets or profiles of the funds being considered by the Plan Committee as investment options for the F.W. Webb 401(k) Plan.

27.     The third quarter 1996 Fact Sheet provided to Plaintiffs stated the following about the Yield Plus Fund:

> The Fund may be appropriate for you if you are looking for an investment that combines the stability of a money market fund with the potential for a higher return from short-term debt securities.

(emphasis added).  A copy of this Fact Sheet is attached hereto as Exhibit A.

28.     As stated above, State Street Bank, SSgA and State Street Solutions representatives repeated this misstatement in meetings during the fall of 1996 with Plaintiffs' representatives.  Specifically, Defendants' representatives indicated to Mr. Mucciarone that the Yield Plus Fund was tantamount to a money market fund.  Mr. Mucciarone duly recorded these statements in his meeting notes, with the notation "money market" next to "Yield Plus Fund."  A copy of these notes is attached hereto as Exhibit B.

29.     Based on Defendants' misstatements about the Yield Plus Fund, Plaintiffs selected the Yield Plus Fund for inclusion as an investment option in the F.W. Webb 401(k) Plan.

30.     Indeed, the Retirement Plan Registration Form, dated October 29, 1996, offered a menu of 16 investment fund choices, including the following six funds from which Mr. Mucciarone, in reliance on Defendants' misstatements about the Yield Plus Fund, selected two funds as indicated in the table:

|   | Seven Seas Money Market Fund |
|---|---|
| X | Seven Seas Yield Plus Fund |
|   | Seven Seas Intermediate Fund |
| X | Seven Seas Bond Market |
|   | Seven Seas Growth & Income Fund |
|   | Seven Seas S&P 500 Index Fund |

31.     Based on Defendants' misstatements, Plaintiffs did not understand the Yield Plus Fund to be a bond fund.  Plaintiffs would not have selected two bond funds had Defendants properly represented the true nature of the investment

strategy of the Yield Plus Fund.

32.     During the course of their sales pitches to Plaintiffs during late 1996, State Street Bank and SSgA provided written materials which touted their alleged experience and qualifications as ERISA fiduciaries, and described their role for the F.W. Webb 401(k) Plan as combining "plan consulting, communications, administration, trustee and investment services."  They claimed to have "unequaled experience in managing client funds as a fiduciary," and that their "investment philosophy" is "focused on managing assets in a fiduciary environment."

33.     In reliance on State Street Bank's and SSgA's representations regarding their fiduciary capabilities and the characteristics of the Yield Plus Fund, Plaintiffs entered into several agreements with State Street Bank and SSgA in late 1996 or early 1997 under which State Street Bank and SSgA agreed to provide, among other things, administrative, investment management, and trustee services for the F.W. Webb 401(k) Plan.  Under these agreements, Plaintiffs agreed to select investment options for the F.W. Webb 401(k) Plan "from among those made available" by State Street Bank and SSgA.

34.     From late 1996 to the present, State Street Bank and SSgA have exercised their discretion in providing investment options to the F.W. Webb 401(k) Plan, including most particularly investment vehicles sponsored or managed by State Street Bank and/or SSgA or their affiliates.  In connection with providing these fund choices to the F.W. Webb 401(k) Plan, State Street Bank regularly provided investment advice upon which the F.W. Webb 401(k) Plan relied.  State Street Bank and SSgA received compensation for their services, including their investment advice, both directly in the form of fees paid by the F.W. Webb 401(k) Plan as well as indirectly via fees received as the result of F.W.

Webb 401(k) Plan participants' investments in funds sponsored and/or managed by State

Street Bank, SSgA and/or their affiliates.  The investment advice given by State Street

Bank and SSgA was provided pursuant to a mutual understanding between them and the

F.W. Webb 401(k) Plan that the F.W. Webb 401(k) Plan would be relying upon State

Street Bank and SSgA as fiduciaries to select appropriate funds for inclusion in the F.W.

Webb 401(k) Plan's investment option menu and to disclose all material facts regarding

those investment options' investment characteristics and performance so that the

investment option choices would be suitable and consistent with the requirements of the

F.W. Webb 401(k) Plan and ERISA.

35.     Among the investment funds made available by State Street Bank and

SSgA were three "Life Solutions" funds which were selected for inclusion in the

investment menu of the F.W. Webb 401(k) Plan.  In connection with these funds, State

Street Bank agreed to serve an an Investment Manager under ERISA Section 3(38) and

was authorized to invest cash held by those funds in, among other things, the Yield Plus

Fund.  Under the Life Solutions agreement, State Street Bank specifically further

acknowledged that it is a fiduciary for the F.W. Webb 401(k) Plan under ERISA section

3(21), i.e. an investment advice fiduciary.

36.     Starting in late 1996, State Street Bank and SSgA met periodically with

the representatives of the F.W. Webb 401(k) Plan to review existing fund options, and to

consider adding additional fund options or deleting existing options.  In connection with

these meetings, State Street Bank and SSgA would provide investment advice on which

F.W. Webb 401(k) Plan representatives relied.  The F.W. Webb 401(k) Plan did not

receive investment advice from any other source, but rather relied exclusively on State

Street Bank's and SSgA's advice regarding the suitability of the funds for the F.W. Webb 401(k) Plan.

37.     In reliance on the investment advice by State Street Bank and SSgA, and subsequently also by CitiStreet, the F.W. Webb 401(k) Plan periodically added or deleted funds from the F.W. Webb 401(k) Plan's investment fund menu.  For example, after consultations with State Street Bank and SSgA, PBHG Growth Fund was deleted as an investment option as of October 1, 1999, replaced by Janus Fund, and SSgA Growth and Income Fund was added as an option.  In connection with those decisions, State Street Bank and SSgA did not disclose that the Yield Plus Fund was not as stable as a money market fund or that there was any risk that the capital invested by F.W. Webb 401(k) Plan participants in the Yield Plus Fund would not be preserved.

38.     In or about April 2000, State Street Corporation and Citigroup formed CitiStreet.  According to a 2000 CitiStreet audit, the majority of the Retirement Investment Services division of State Street Bank became a substantial component of CitiStreet, LLC and such division became known as the Institutional Division of CitiStreet.  The CitiStreet audit further stated that "CitiStreet's major services fall into six cateogories: … Investment Management for defined contribution plans is provided through State Street."  The same CitiStreet audit also stated that CitiStreet operations overview indicates regulatory compliance is governed by ERISA and that a Fiduciary Committee is maintained "to oversee its relevant fiduciary activities."

39.     Upon information and belief, at or about the time CitiStreet was formed by State Street Corporation and Citigroup, CitiStreet continued to provide the same services as formerly provided by State Street Bank and SSgA to Plaintiffs using the same

personnel and under the same agreements.  Since 2000, CitiStreet has provided F.W. Webb with the investment management and recordkeeping/administrative functions previously provided by State Street Bank and SSgA.  CitiStreet also continued to provide investment advice to Plaintiffs, including without limitation advising Plaintiffs on which investment options to add, maintain, omit and delete from the investment option menu for the F.W. Webb 401(k) Plan.

     40.    Despite regular meetings with F.W. Webb 401(k) Plan representatives to review the character, objectives, and strategies of the F.W. Webb 401(k) Plan's fund offerings, CitiStreet never disclosed that the investment strategy or risk profile of the Yield Plus Fund had changed or was not a suitable capital preservation option for F.W. Webb 401(k) Plan participants.  To the contrary, State Street Bank and CitiStreet personnel met once or twice a year with Plaintiffs to discuss the performance of the F.W. Webb 401(k) Plan's various investments, to recommend new funds for F.W. Webb's consideration, and to address any relevant changes in the industry that might affect the F.W. Webb 401(k) Plan.  Plaintiffs relied solely upon the investment advice provided by State Street Bank and CitiStreet during these meetings and received no other or additional investment advice from other sources.  That stability of the Yield Plus Fund might not have a stable value was never discussed at these meetings.  Believing that the Yield Plus Fund continued to have the stability of a money market fund and was a relatively risk-free investment for its participants, and based on its satisfactory performance over time, Plaintiffs had no reason to question the advisability of inclusion of the Yield Plus Fund in the F.W. Webb 401(k) Plan.

41.     CitiStreet effectively repeated its predecessor's misrepresentations about the Yield Plus Fund as having the stability of a money market fund.

42.     For example, CitiStreet met with F.W. Webb 401(k) Plan representatives shortly after the first quarter of 2006 and provided them with a bound booklet regarding the existing fund option characteristics.  The booklet contained a 2004 survey comparing the funds selected for the F.W. Webb 401(k) Plan against the results of a survey of the defined contribution plan marketplace.  The comparison, attached hereto as Exhibit C, showed that 44% of defined contribution plans surveyed in 2004 included money market funds and that the F.W. Webb 401(k) Plan included a money market fund as well.  The "money market" fund referenced in this document as being invested in by 44% of F.W. Webb 401(k) Plan participants was the Yield Plus Fund.  This chart constitutes both a separate misrepresentation by CitiStreet that the Yield Plus Fund was a money market fund and a confirmation of its predecessor's misrepresentations.

43.     In the same Q1 2006 booklet, CitiStreet provided a document describing current industry trend data regarding the defined contribution marketplace and the F.W. Webb 401(k) Plan's fund options compared to that marketplace.  This document stated both in a pie chart and in accompanying text that the F.W. Webb 401(k) Plan's 13% investment in the Yield Plus Fund was "Stable Value / Money Market."  A copy of this document is attached hereto as Exhibit D.

44.     The booklet also contained at its end a fact sheet stating that unlike a money market fund, the price of the Yield Plus Fund may fluctuate from time to time because the fund may invest in securities with higher levels of risk and different maturities.  However, the same fact sheet emphasized that the Yield Plus Fund attempts

to meet its objective by investing in "high quality" securities. Moreover, earlier in the booklet, CitiStreet provided four (4) pages of detailed information on the investment style, performance, risk and return characteristics for all of the F.W. Webb 401(k) Plan's funds, except for the Yield Plus Fund. No such detailed information was provided regarding the risk level of the Yield Plus Fund.

45.     Given these representations and material omissions, the F.W. Webb 401(k) Plan representatives continued to understand that the Yield Plus Fund was a stable value product, tantamount to a money market fund, whose capital would be preserved. Reflecting this understanding, Ellen Antonucci, who had become the plan administrator at F.W. Webb Company for the F.W. Webb 401(k) Plan, wrote the word "Safe" in the booklet next to its description of the Yield Plus Fund. See Exhibit E attached hereto.

**B.     The Yield Plus Fund's Purported Conservative Investment Strategy Is Abandoned to Speculate In High-Risk, Low-Quality Investments**

46.     State Street Bank, SSgAand CitiStreet, never characterized the Yield Plus Fund to Plaintiffs as a "bond" fund that had materially greater risk to principal than a money market fund. Defendants repeatedly represented to Plaintiffs that the Yield Plus Fund was tantamount to a money market fund and was a safe, conservative investment that would provide stable, predictable levels of return. Indeed, Defendants stressed in communications with Plaintiffs that the Yield Plus Fund was stable and a low risk investment.

47.     Apparently, sometime in 2000 or 2001, the way in which the Yield Plus Fund was invested changed dramatically. SSgA apparently abandoned the Yield Plus Fund's conservative investment strategy to speculate in high-risk, low-quality mortgage-backed investments.

48.     However, despite the Yield Plus Fund's dramatic shift to include riskier investments, and notwithstanding that Defendants had acted as Plaintiffs' investment advice fiduciaries for a decade, State Street Bank, SSgA or CitiStreet never alerted Plaintiffs to these changes.  To make matters worse, during the 2005-2007 timeframe, SSgA -- in violation of its fiduciary duties and with wanton disregard for the interests of the F.W. Webb 401(k) Plan participants -- chose to invest the Yield Plus Fund heavily in risky financial instruments such as low-quality mortgage-backed bonds supported by subprime home loans and other illiquid asset-backed securities.  These high-risk, low quality investments directly exposed the Yield Plus Fund to the volatility of the subprime mortgage market at the time when it was publicly reported that defaults of subprime mortgages were skyrocketing, and that numerous subprime lenders were facing insolvency.

49.     In addition, such low-quality investments did not measure up to the promises in the Yield Plus Fund's first quarter 2006 Fact Sheet that it would invest primarily in "high quality" securties.

**C.    Defendants' Imprudent Management of the Yield Plus Fund and Fraudulent Representations and Nondisclosures Come To Light**

50.     In or about April 2007, Plaintiffs and CitiStreet personnel met to discuss the performance of the F.W. Webb 401(k) Plan's various investments, to recommend new funds for F.W. Webb's consideration, and to address any relevant changes in the industry that might affect the F.W. Webb 401(k) Plan.  The April 2007 meeting agenda states that CitiStreet will provide a service review, investment review and a communications review.  Upon information and belief, the "investment review" was provided by Doug Lankow, which was included within a separate binder from the

"service review" prepared by John Latella and Keith Fuller.  The "investment review" provides detailed "fund characteristics" for each investment option made available by State Street Bank for the F.W. Webb 401(k) Plan except for the Yield Plus Fund. Furthermore, additional materials prepared by CitiStreet and provided to Plaintiffs at the April 2007 meeting also provide "investment analysis" of the current and potential investment options made available by State Street Bank for the F.W. Webb 401(k) Plan.

51.     Based on the investment advice provided by CitiStreet, Plaintiffs selected thirteen new investment options for the F. W. Webb 401(k) Plan.  As part of the transition to the new investment options, five existing investment options were to be eliminated from the F.W. Webb 401(k) Plan effective April 30, 2008, including three (3) SSgA Life Solution Funds, a Legg Mason Fund, and the SSgA Small Cap Fund.

52.     At the time of the April 2007 meeting, the Yield Plus Fund had 670 F.W. Webb 401(k) Plan participants, the most of any Plan fund.  According to the "service review" provided by CitiStreet, some 132 F.W. Webb 401(k) Plan participants had invested all of their money in only one (1) Plan fund, and more than half of those participants – 71 – had invested all of their money in the Yield Plus Fund.

53.     Despite the preeminent role played by the Yield Plus Fund in the F.W. Webb 401(k) Plan, Defendants' representatives did not disclose in the April 2007 meeting that the Yield Plus Fund was not a stable value product, that it was not tantamount to a money market fund, that the fund had changed its investment strategy and now was invested in risky securities, or that the fund was not capable of preserving the capital of the F.W. Webb 401(k) Plan participants.

54.     At the same time State Street Bank and CitiStreet were exercising their discretion regarding the investment options to be made available to the F.W. Webb 401(k) Plan, they failed to inform Plaintiffs about the dramatically changed investment strategy of the Yield Plus Fund.

55.     In reliance on the continuing representations by Defendants, who had served as Plaintiffs' investment advice fiduciaries for a decade, Plaintiffs did not take any action to remove the Yield Plus Fund as an investment option for the F.W. Webb 401(k) Plan.

56.     Instead, the enhanced risk attributable to the actions and omissions of State Street, SSgA and CitiStreet were not known to Plaintiffs until the final weeks of 2007 or very early 2008, after much of the damage already was done.

57.     After receiving account statements for the third quarter of 2007 which showed losses to the Yield Plus Fund and receiving complaints about and inquiries into the Yield Plus Fund's recent performance from certain participants in the F.W. Webb 401(k) Plan, Mr. Mucciarone called Keith Fuller, Plaintiffs' relationship manager at CitiStreet, to question him about the Yield Plus Fund's losses.  When Mr. Fuller failed to return the call the following day, Mr. Mucciarone called him again.  At that time, Mr. Fuller indicated that he wanted Doug Lankow, Plaintiffs' investment analyst at CitiStreet, to be a part of the conversation.  When Mr. Mucciarone finally was able to reach Mr. Lankow and Mr. Fuller, Mr. Lankow admitted that he knew the Yield Plus Fund was not a true money market fund, but that he had neglected to disclose such information and that the Yield Plus Fund's investment strategy included high-risk investments, including most recently at the meeting with Plaintiffs in April 2007.

58.     As of January 16, 2008, Defendants continued to report on their website that the Yield Plus Fund had experienced a calendar year-to-date gain as of December 13, 2007 of 5.11%.  This was false.  In fact, the Yield Plus Fund had experienced a very substantial loss of 13.34% for 2007.

59.     After further investigation about the Yield Plus Fund's performance, Mr. Mucciarone again called Mr. Fuller to question him regarding the discrepancy for Yield Plus Fund performance as reflected in statements received by F.W. Webb 401(k) Plan participants versus the number reported on the Yield Plus Fund's website.  In multiple voicemail messages left for Mr. Mucciarone on the subject, CitiStreet admitted its error, admitted that the 5.31% gain posted on the website reflected the index that the Yield Plus Fund performance was tracked against and not the Yield Plus Fund's actual performance, and promised that the website would be corrected within three days.  The website was subsequently amended to report the true performance of the Yield Plus Fund which was a 13.34% loss for 2007, compared to a 5.31% gain for its benchmark, a discrepancy of some 18.65%.

60.     A money market fund with stability of principal should not lose any value, much less 13.34%.

61.     At around the same time, Mr. Mucciarone also spoke with the SSgA investment manager for the Yield Plus Fund to determine when the investment strategy for the Yield Plus Fund had changed.  The investment manager reported that sometime in 2000 or 2001 the Yield Plus Fund had become more aggressive and had shifted to investing in mortgage-backed securities, but he refused to provide any additional

information in response to Mr. Mucciarone's specific questions about the Yield Plus Fund.

62.     There is no question that the losses incurred by the Yield Plus Fund resulted from imprudent investments in subprime mortgage-backed securities and other high-risk, low quality financial instruments.

63.     Indeed, experts in the field attribute the stark losses to the Yield Plus Fund during 2007 to SSgA's imprudent management of the fund.

64.     For example, Kiplinger quoted Bob Auwaerter, the head of bond investments for Vanguard funds, as follows:

> Auwaerter says a lot of fund managers are used to taking chances to stretch for yield and forgot to question why a triple-A rated mortgage-backed security would be quoted at a yield nearly a full percentage point more than other triple-A debt. . . .  SSgA Yield Plus . . . reports it was "impacted" by problems with subprime mortgages and suffered when other investors sold the same kind of securities Yield Plus held, "resulting in severe illiquidity."  Translation: The SSgA team of managers stayed to the bitter end and now finds that the value of these securities is far below what they paid for them.  Any chance for a recovery?  Not for a while. . . . Neither company was willing to let managers discuss where they might think the bottom is for the busted securities that have ruined their years.

Jeffrey R. Kosnet, *Ultra-Short: Still Ultra-Safe?,* <u>Kiplinger Washington Editors</u>, November 20, 2007.

65.     Since then, State Street Bank has set aside $625 million to cover legal exposure stemming from the mismanagement of its bond funds and removed the managers of the Yield Plus Fund.  On January 3, 2008, State Street announced that SSgA Chief Executive Officer William W. Hunt would be replaced.  The Yield Plus Fund managers also were replaced, as announced on January 25, 2008.

State Street's CEO, Ronald E. Logue, stated:

We have reviewed the actively managed fixed-income strategies at SSgA that contained investments backed by sub-prime mortgages.  Based on our review and discussions with certain customers who were invested in these strategies, we have established this reserve to address legal exposure and other costs relating to these strategies. . . . Some of our customers that were invested in the active fixed-income strategies have raised concerns that we intend to address . . . .

See Prospectus for Yield Plus Fund updated January 25, 2008, and posted at http://phx.corporate-ir.net/phoenix.zhtml?c=78261&p=irol-newsArticle&ID=1090870&highlight= ; http://www.ssgafunds.com/fund_doc/fund_doc_20060328_170500/12_2007_SSgA_Combined_Prospectus_supp04022008.pdf

**D.      Losses to Plaintiffs' Investments in the Yield Plus Fund Were Due to Defendants' Violations of Their Fiduciary Duties Under ERISA**

66.     Defendants' conduct with respect to the F.W. Webb 401(k) Plan and Yield Plus Fund was grossly negligent and a clear dereliction of their duties as fiduciaries.  The conduct was manifestly imprudent because, among other reasons:

- Defendants failed to fully and fairly disclose to Plaintiffs and individual participants and beneficiaries Defendants' deviation from the represented, conservative investment strategy and objectives of the Yield Plus Fund and the extreme risk to participants' retirement assets caused by this change;

- Despite the represented objectives for the Yield Plus Fund, State Street Bank and SSgA abandoned investing only in high-quality debt instruments and resorted to a search for higher yields from mortgage-backed bonds supported by subprime home loans;

- Defendants knew of and/or failed to investigate the hazards of the highly risky and speculative investments in securities, and the highly leveraged manner in which it made these investments;

- The risk associated with the investment in mortgage-backed financial instruments and other investments described herein was far above and beyond the normal, acceptable risk associated with investment in fixed income securities; and

- Defendants had a duty to avoid speculating with the F.W. Webb 401(k) Plan's assets and mismanaging the assets in the manner alleged herein.

67.     A reasonable fiduciary acting prudently, loyally and for the exclusive benefit of the F.W. Webb 401(k) Plan and its participants, as required by ERISA, would not have gambled with the F.W. Webb 401(k) Plan's assets and savings as Defendants did in this case, and instead would have adhered to the conservative investment strategy and objectives of the Yield Plus Fund, which had been represented by Defendants to Plaintiffs.

**1.      The F.W. Webb 401(k) Plan Suffered Huge Losses
        Due to Defendants' Conduct**

68.     Substantial investment losses were suffered by the F.W. Webb 401(k) Plan and its participants who invested in the Yield Plus Fund during the second half of 2007 and early 2008.  Had Defendants properly performed their respective fiduciary duties, participants in the F.W. Webb 401(k) Plan would not have suffered such significant losses in the Yield Plus Fund.

69.     The F.W. Webb 401(k) Plan, and its individual participants, had more money invested in the Yield Plus Fund than any other single fund in the F.W. Webb

401(k) Plan, $13,057,230.51 out of $93,614,112.15 plan assets held in mutual funds as of

January 1, 2007. The Yield Plus Fund then lost 13.34% during 2007, compared to its

benchmark which had a gain of 5.31%, a difference of 18.65%. After netting out

contributions and withdrawals during the year, the principal as of January 1, 2007 was

worth only $9,471,991.90 as of February 6, 2008.

70.     Had the Fund performed consistently with its benchmark, the Yield Plus

Fund would have been worth $12,129,862.45 as of February 6, 2008. The Yield Plus

Fund thus suffered a loss of not less than $2,657,870.55. This loss is directly attributable

to Defendants' misrepresentations and their failure to disclose the gross mismanagement

of the Yield Plus Fund.

## 2.     Defendants' Fiduciary Status Under ERISA

71.     Under ERISA Section 404(a), a plan trustee must discharge its fiduciary

duties with respect to plan assets "solely in the interest" of plan participants and

beneficiaries and (1) for the exclusive purpose of providing benefits and defraying

reasonable administrative expenses; (2) with the care, skill, prudence, and diligence of "a

prudent expert" acting under similar circumstances; (3) by diversifying investments so as

to minimize the risk of large losses; and (4) in accordance with plan documents and

instruments to the extent that they are consistent with ERISA.

72.     Here, State Street Bank executed multiple contracts with Plaintiffs in 1997

for, among other things, administrative and record keeping services, investment

management services and, upon information and belief, trust services. State Street Bank

established the "Defined Contribution Plans Master Trust Agreement between F.W.

Webb Company and State Street Bank and Trust Company," effective January 1, 1997,

which was most recently amended and restated on September 1, 2002 (the "Trust

Agreement").  Pursuant to the Trust Agreement, State Street Bank agreed to act as trustee

on behalf of the F.W. Webb 401(k) Plan.

73.     The Trust Agreement directs that State Street Bank shall be a fiduciary of

the F.W. Webb 401(k) Plan.  As a directed trustee of the F.W. Webb 401(k) Plan, State

Street Bank is, by definition, a fiduciary under ERISA by virtue of its authority or control

over the assets of the F.W. Webb 401(k) Plan.

74.     ERISA treats as fiduciaries not only persons explicitly named as

fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who

perform fiduciary functions or "exercises any authority or control respecting the

management or disposition of the plan assets."  Thus, a person is a fiduciary to the extent

"(i) he exercises any discretionary authority or discretionary control respecting

management of such plan or exercises any authority or control respecting management or

disposition of its assets, (ii) he renders investment advice for a fee or other compensation,

direct or indirect, with respect to any moneys or other property of such plan, or has any

authority or responsibility to do so, or (iii) he has any discretionary authority or

discretionary responsibility for the administration of such plan."  ERISA § 3(21)(A), 29

U.S.C. § 1002(21)(A).

75.     The Department of Labor ("DOL") has amplified the statute's definition

of an investment advice fiduciary.  The DOL regulations state a person will be viewed as

an investment advice fiduciary if he provides advice regarding the advisability of

investing in securities (e.g., mutual fund shares) and renders the advice:

>       on a <u>regular basis</u> to the plan pursuant to a mutual
>       agreement, arrangement or understanding, written or

> otherwise, . . . that such [advice] will serve as <u>a primary</u>
> <u>basis</u> for investment decisions with respect to plan assets,
> and that such person will render <u>individualized</u> investment
> advice to the plan <u>based on the particular needs of the plan</u>
> regarding such matters as . . . overall portfolio composition
> . . . .

29 C.F.R. 2510.3-21(c) (emphasis added).

76.     By letter agreement dated February 13, 1997, State Street Bank and F.W. Webb also entered into an administrative services agreement (the "ASA").  The ASA is on SSgA letterhead and attaches a State Street Solutions fee schedule for certain services. The fee schedule provides for certain fees to be charged by State Street Solutions.  In addition, upon information and belief, State Street Bank received indirect compensation from the funds that F.W. Webb 401(k) Plan participants selected to invest, which including those SSgA funds made available by State Street Bank.

77.     Pursuant to the ASA, State Street Bank, through its affiliates and/or divisions SSgA and State Street Solutions, further agreed to provide services in connection with the F.W. Webb 401(k) Plan.  The ASA provides that F.W. Webb shall select the investment options to be offered under the F.W. Webb 401(k) Plan from among those made available by State Street Bank (and, thus, through SSgA).  Therefore, under the ASA, State Street Bank and its designated services provider -- SSgA, State Street Solutions and subsequently, CitiStreet -- acted in concert to provide services including investment advice to Plaintiffs in connection with the F.W. Webb 401(k) Plan.  Indeed, upon information and belief, State Street Bank, SSgA, State Street Solutions and subsequently, CitiStreet, coordinated their operations and employees to provide services and advice to Plaintiffs in connection with the F.W. Webb 401(k) Plan and Yield Plus Fund.

78.     In or about 2000, CitiStreet agreed to and did assume the contractual

obligations to Plaintiffs set forth in the ASA, including without limitation the contractual

obligation to offer to Plaintiffs investment options made available by State Street Bank,

which Plaintiffs were obligated to select and include in the investment option menu of the

F.W. Webb 401(k) Plan.  Upon information and belief, CitiStreet received compensation

for its service both directly from the fees received from the F.W. Webb 401(k) Plan and

indirectly through fees generated and received from the selected SSgA Funds that F.W.

Webb 401(k) Plan participants selected to invest.

79.     At relevant times, State Street Bank received compensation from the F.W.

Webb 401(k) Plan both directly through and under certain contracts with Plaintiffs,

including without limitation the ASA.  Upon information and belief, State Street Bank

also was compensated indirectly through fees generated and received from the selected

SSgA Funds that F.W. Webb 401(k) Plan participants selected to invest.

80.     Further, Defendants' investment management services included, among

other things and without limitation, selecting the funds to make available as investment

options to Plaintiffs and the F.W. Webb 401(k) Plan, advising Plaintiffs about those funds

for inclusion into the investment option menu for the F.W. Webb 401(k) Plan, advising

Plaintiffs about those funds to omit or delete from the investment option menu for the

F.W. Webb 401(k) Plan, advising Plaintiffs of the investment characteristics, strategies,

risk profiles, and objectives of the investment options, and providing Plaintiffs with

possible alternative investment options for the F.W. Webb 401(k) Plan.

81.     Upon information and belief, in or about late 1996, SSgA provided

materials to Plaintiffs that contained investment analysis for the investment options made

available by State Street Bank for the F.W. Webb 401(k) Plan.  Within these materials,

SSgA represented that it, among other things, (i) will provide "flexible investment

management services"; (ii) has "unequaled experience in managing client funds as a

fiduciary"; (iii) combines plan consulting communications, administration, trustee and

investment services; (iv) maintains an investment policy that is "focused on managing

assets in a fiduciary environment"; and (v) assists in fulfilling ERISA 404(c)

requirements as part of its communication challenge services.

82.     There is no question that Plaintiffs relied substantially on the Defendants'

account managers as to investment issues.  Indeed, from the very beginning when

Plaintiffs decided to transfer the F.W. Webb 401(k) Plan from BayBank to State Street

Bank until the present day, Defendants' personnel met regularly -- at least once or twice a

year -- with Plaintiffs to discuss the performance of the F.W. Webb 401(k) Plan's various

investments, to recommend new funds for Plaintiffs' consideration, and to address any

relevant changes in the industry that might affect the F.W. Webb 401(k) Plan.

83.     Specifically, while assisting Plaintiffs in selecting appropriate funds for

the F.W. Webb 401(k) Plan, Defendants' representatives repeatedly stated to Plaintiffs

that the Yield Plus Fund was as stable as a money market fund but would provide better

returns.  Defendants regularly rendered individualized investment advice to Plaintiffs

upon which Plaintiffs relied in connection with the F.W. Webb 401(k) Plan in general

and the Yield Plus Fund in particular.

84.     Here, the affiliated entities State Street Bank, SSgA, State Street Solutions

and CitiStreet served as investment advice fiduciaries to the F.W. Webb 401(k) Plan.

Therefore, under ERISA § 404(a), Defendants were required to discharge their respective

duties as a fiduciary with respect to the F.W. Webb 401(k) Plan and its assets "solely in the interest" of the plan participants and beneficiaries and (1) for the exclusive purpose of providing benefits and defraying reasonable administrative expenses; (2) with the care, skill, prudence, and diligence of "a prudent expert" acting under similar circumstances; (3) by diversifying investments so as to minimize the risk of large losses; and (4) in accordance with plan documents and instruments to the extent that they are consistent with ERISA.  29 U.S.C. § 1104(a)(1)(A-D).

### 3.   Defendants Breach Their Fiduciary Duties Under ERISA

### a.   State Street Bank Breached Its Fiduciary Duty

85.   State Street Bank breached its fiduciary obligation to act in a prudent manner by, among other things and without limitation, allowing the Yield Plus Fund to be included in the investment menu of the F.W. Webb 401(k) Plan.  For example, State Street Bank knew or should have known that the Yield Plus Fund was not the type of investment that Plaintiffs intended to make available to participants, and that investment in the Yield Plus Find was contrary to the F.W. Webb 401(k) Plan documents and/or ERISA.

86.   Furthermore, State Street Bank also knew or should have known that State Street Bank and SSgA representatives had characterized inaccurately the Yield Plus Fund as the functional equivalent of a money market fund when it was first presented to Plaintiffs as an investment option and, therefore, should have known that it was an imprudent investment offering.  State Street Bank further breached its obligations by failing to correct this misrepresentation for more than a decade.

87.     In addition, State Street Bank violated its fiduciary obligations of prudence and loyalty to participants under Section 404(a) of ERISA by failing to disclose to Plaintiffs the risk inherent in the Yield Plus Fund, which would have alerted Plaintiffs of the inadvisability of continuing to hold such a fund as an investment option in the F.W. Webb 401(k) Plan.

88.     Moreover, it should have been clear to State Street Bank that the inclusion of a capital preservation fund, such as a money market fund or stable value fund, was critical to satisfying the F.W. Webb 401(k) Plan's investment objectives and to meet the requirements of Section 404(c) of ERISA.  State Street Bank cannot shield itself from liability by claiming that it was merely following instructions to include the Yield Plus Fund as an investment option for the F.W. Webb 401(k) Plan or to invest assets of the F.W. Webb 401(k) Plan in the Yield Plus Fund.  State Street Bank should not have followed any such instructions as they were based on State Street Bank's own misrepresentations, omissions and breach of duties regarding the appropriateness of including the Yield Plus Fund as an investment option for the F.W. Webb 401(k) Plan.

89.     Upon information and belief, State Street Bank also knew or should have known about SSgA's imprudent management of the Yield Plus Fund.  As an affiliate of SSgA, State Street Bank knew or should have known of SSgA's imprudent management of the Yield Plus Fund by virtue of, among other things and without limitation, the Yield Plus Fund's investment in securities with undue levels of risk.  The enhanced risk that was attributable to SSgA's actions was material information not generally known by the public that should have triggered disclosures of such risk to Plaintiffs by State Street Bank.

90.     Finally, State Street Bank further violated its duties as a co-fiduciary. Section 405(a) of ERISA renders a fiduciary liable for breaches committed by other fiduciaries in three situations: (1) if it participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by its failure to comply with  the administration of its specific responsibilities which give rise to its status as a fiduciary, it has enabled such other fiduciary to commit a breach; or (3) if it has knowledge of a breach by such other fiduciary, unless it makes reasonable efforts under the circumstances to remedy the breach.

91.     As alleged above, upon information and belief, State Street Bank knew or should have known that its affiliates SSgA and CitiStreet had violated their respective fiduciary duties to the F.W. Webb 401(k) Plan by, among other things and without limitation, inaccurately representing the Yield Plus Fund as tantamount to a money market fund, inaccurately representing the true investment risk of the Yield Plus Fund, and that SSgA was imprudently mismanaging the Yield Plus Fund.  Yet State Street Bank failed to take any steps to remedy this breach.

   **b.     CitiStreet and SSgA Breached Their Respective
           Fiduciary Duties Under ERISA**

92.     Similarly, under Section 404(a) of ERISA, CitiStreet and SSgA each breached its fiduciary obligation to act in a prudent manner by, among other things and without limitation, including the Yield Plus Fund in the investment menu of the F.W. Webb 401(k) Plan, and allowing the Yield Plus Fund to continue to be included in the investment menu.  For example, CitiStreet and SSgA knew or should have known that the

Yield Plus Fund was not the type of investment that Plaintiffs intended to make available to participants, and that investment in the Yield Plus Fund was contrary to the F.W. Webb 401(k) Plan's documents and/or ERISA.

93.    Indeed, Plaintiffs repeatedly had advised CitiStreet and SSgA that it intended to make a money market fund available to plan participants and was led to believe by CitiStreet, and its predecessors State Street Bank, State Street Solutions and/or SSgA, that the Yield Plus Fund was tantamount to a money market fund.  Such representations were not accurate and yet they were repeated.

94.    CitiStreet and SSgA also continued to misrepresent the Yield Plus Fund as a money market fund at all times knowing that its statements were not true, even after SSgA abandoned the investment objectives for the Yield Plus Fund and began to deviate from investing only in high-quality securities.

95.    Indeed, at no time did CitiStreet take reasonable steps or adequate measures to disclose or correct the prior misrepresentations made to the Plaintiffs in connection with the F.W. Webb 401(k) Plan and Yield Plus Fund.  To the contrary, CitiStreet continued to misrepresent the true investment strategy of the Yield Plus Fund so that Plaintiffs would continue to believe that the F.W. Webb 401(k) Plan included a money market fund and, therefore, continue to invest in the Yield Plus Fund.

96.    For example, at the April 2007 meeting with Plaintiffs, CitiStreet fraudulently failed to disclose that (i) the Yield Plus Fund was not a true money market fund; (ii) the investment strategy of the Yield Plus Fund had changed dramatically; (iii) SSgA had abandoned the Yield Plus Fund's conservative investment strategy to speculate

in high-risk, low-quality mortgage-backed investments; and (iv) the Yield Plus Fund did not represent a capital preservation investment option for the F.W. Webb 401(k) Plan.

97.     In addition, as alleged above, sometime after 2004, CitiStreet compared the funds selected for the F.W. Webb 401(k) Plan against the results of a survey of the defined contribution plan marketplace.  The results of that survey prepared and communicated to Plaintiffs by CitiStreet was instrumental in continuing the misunderstanding under which Plaintiffs operated because the comparison survey showed that 44% of defined contribution plans surveyed in 2004 included money market funds and that the F.W. Webb 401(k) Plan included a money market fund as well.  See Exhibit C.  Since there was no other investment option in the F.W. Webb 401(k) Plan that could conceivably have been regarded as a money market fund, this comparison evidences that CitiStreet continued to misrepresent the true character of the Yield Plus Fund to Plaintiffs.  Moreover, CitiStreet provided a document describing current industry trend data regarding the defined contribution marketplace and the F.W. Webb 401(k) Plan's fund options compared to that marketplace.  This document stated both in a pie chart and in accompanying text that the F.W. Webb 401(k) Plan's 13% investment in the Yield Plus Fund was "Stable Value / Money Market."  See Exhibit D.

98.     SSgA also failed to disclose to Plaintiffs that its investment approach for the Yield Plus Fund became significantly more aggressive over time and that SSgA ultimately abandoned its stated investment strategy and conservative objectives to invest the Yield Plus Fund primarily in low-quality, highly risky securities as a last-ditch effort to improve the Yield Plus Fund's performance.

99.     CitiStreet also violated its fiduciary obligations of prudence and loyalty to the F.W. Webb 401(k) plan and its participants under Section 404(a) of ERISA by, among other things and without limitation, failing to disclose to Plaintiffs the risk inherent in the Yield Plus Fund, which would have alerted Plaintiff of the inadvisability of continuing to hold the Yield Plus Fund.  The information provided to Plaintiffs by CitiStreet did not adequately address the apparent change to the represented conservative investment strategy of the Yield Plus Fund, and CitiStreet failed to alert properly the Plaintiffs of the changes made to the investment strategy of the Yield Plus Fund.

100.     As an affiliate of SSgA, CitiStreet knew or should have known of SSgA's imprudent management of the Yield Plus Fund by virtue of the Yield Plus Fund's investment in securities with undue levels of risk.  The enhanced risk attributable to SSgA's actions was material information not generally known to Plaintiffs until at least January 18, 2008, when CitiStreet changed its website to correct the misrepresentation that had incorrectly described the Yield Plus Fund as having more than a 5% gain for the year.  SSgA's mismanagement, known only to CitiStreet and others within State Street Bank affiliates, should have triggered disclosures of such risk by CitiStreet and SSgA to Plaintiffs.  CitiStreet and SSgA, therefore, also violated their respective duties as a co-fiduciary under Section 405(a) of ERISA.

**E.     Plaintiffs' Claims Under ERISA**

101.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) provides, in pertinent part, that a civil action for breach of fiduciary duty may be brought by the Secretary of Labor, or a participant, beneficiary or fiduciary of a plan for relief under ERISA § 409, 29 U.S.C. § 1109.

102.    ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary

Duty," provides, in pertinent part,

> Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon fiduciaries
> by this subchapter shall be personally liable to make good to such plan any
> losses to the plan resulting from each such breach, and to restore to such
> plan any profits of such fiduciary which have been made through use of
> the assets of the plan by the fiduciary, and shall be subject to such other
> equitable or remedial relief as the court may deem appropriate, including
> removal of such fiduciary.

103.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) authorizes individual

participants to seek equitable relief from defendants, including, without limitation,

injunctive relief and, as available under applicable law, constructive trust, restitution, and

other monetary relief.

104.    ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B),

provide, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries, for the exclusive purpose of

providing benefits to participants and their beneficiaries, and with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims.

105.    According to DOL regulations and case law interpreting this statutory

provision, in order to comply with the prudence requirement under ERISA § 404(a), a

fiduciary must show that: (a) he has given appropriate consideration to those facts and

circumstances that, given the scope of such fiduciary's investment duties, the fiduciary

knows or should know are relevant to the particular investment or investment course of

action involved, including the role the investment or investment course of action plays in

that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and (b) he has acted accordingly.

106.     As set forth herein, Defendants failed abysmally in this regard, and generally, in their duty to represent the true investment risk of the Yield Plus Fund and to manage the Yield Plus Fund prudently, loyally, and in the best interests of the F.W. Webb 401(k) Plan and its participants.

107.     Plaintiffs therefore bring this action under the authority of ERISA § 502(a)(3) for equitable relief and ERISA §§ 409(a) and 502(a)(2) to recover losses sustained by the F.W. Webb 401(k) Plan arising out of the breaches of fiduciary duties under ERISA by the Defendants.

**F.     ERISA § 404(c) Defense Inapplicable to Defendants**

108.     ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from participants' exercise of control over investment decisions in ERISA-governed retirement plans.  For § 404(c) to apply, participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the numerous procedural and substantive requirements of ERISA § 404(c), 29. U.S.C. § 1104(c), and the regulations promulgated under it.

109.     ERISA § 404(c) does not apply here for several reasons.  First, ERISA § 404(c) does not and cannot provide any defense to Defendants' decision to implement and maintain an imprudent investment strategy for the Yield Plus Fund, as these were not decisions that were made or controlled by the participants.  See Final Reg. Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans) ("Final

404(c) Reg."), 57 Fed. Reg. 46906-01, 1992 WL 277875, at * 46924 n. 27 (Oct. 13,

1992) (codified at 29 C.F.R. pt. 2550) (noting that "the act of limiting or designating

investment options which are intended to constitute all or part of the investment universe

of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through

fiduciary designation or express plan language, is not a direct or necessary result of any

participant direction of such plan").

110.    Second, ERISA § 404(c) does not apply because Defendants failed to

ensure effective participant control by providing complete and accurate information to

participants and plans regarding the manner in which SSgA managed the Yield Plus

Fund.  See 29 C.F.R. § 2550.404c-1(b)(2)(i)(B) (the participant must be provided with

"sufficient information to make informed decisions").  Defendants represented that the

Yield Plus Fund was tantamount to a money market fund but with better returns, and was

stably, conservatively invested in high-quality debt securities; in truth, the Yield Plus

Fund was an ultra-short bond fund which SSgA utilized to invest the assets of the Yield

Plus Fund in highly risky, inappropriate and low-quality securities, including subprime

mortgage debt securities.  As a consequence, participants did not have informed control

over the portion of their assets that were invested in the Yield Plus Fund as a result of

their investment directions, and the Defendants remain entirely responsible for losses that

result from such investment.

111.    Because ERISA § 404(c) does not apply here, Defendants' liability to the

F.W. Webb 401(k) Plan, its participants and beneficiaries, and F.W. Webb Company for

losses caused by the Yield Plus Fund's misrepresented, undisclosed, risky, inappropriate

investment strategies is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the F.W. Webb 401(k) Plan.

<u>COUNT I</u>
BREACH OF FIDUCIARY DUTY UNDER ERISA
(AGAINST STATE STREET BANK, SSgA and CITISTREET)

112.    Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

113.    State Street Bank was at all relevant times an ERISA fiduciary with respect to the F.W. Webb 401(k) Plan and the assets of the F.W. Webb 401(k) Plan invested in the Yield Plus Fund.

114.    SSgA was at all relevant times an ERISA fiduciary with respect to the F.W. Webb 401(k) Plan and the assets of the F.W. Webb 401(k) Plan invested in the Yield Plus Fund.

115.    CitiStreet was at relevant times an ERISA fiduciary with respect to the F.W. Webb 401(k) Plan and the assets of the F.W. Webb 401(k) Plan invested in the Yield Plus Fund.

116.    Defendants were obligated to discharge their duties with respect to the F.W. Webb 401(k) Plan and Yield Plus Fund with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

117.    Contrary to its duties and obligations under ERISA, State Street Bank breached its fiduciary obligation to act in a prudent and loyal manner by, among other things and without limitation, (i) initially misrepresenting the Yield Plus Fund as

tantamount to a money market fund; (ii) failing to disclose misrepresentations made by
CitiStreet and SSgA about the nature of and true investment risk of the Yield Plus Fund;
(iii) failing to disclose that the stability of the Yield Plus Fund became materially
compromised over time; (iv) failing to disclose the mismanagement of the Yield Plus
Fund; (v) recommending the Yield Plus Fund for the investment menu of the F.W. Webb
401(k) Plan as a capital preservation fund; and (vi) allowing the Yield Plus Fund to
continue to be included over time.

118.    Contrary to its duties and obligations under ERISA, SSgA breached its
fiduciary obligation to act in a prudent and loyal manner by, among other things and
without limitation, (i) misrepresenting the Yield Plus Fund as tantamount to a money
market fund but with better returns; (ii) misrepresenting the nature of and true investment
risk of the Yield Plus Fund; (iii) recommending the Yield Plus Fund for the investment
menu of the F.W. Webb 401(k) Plan as a capital preservation fund, and allowing the
Yield Plus Fund to continue to be included in the investment menu; (iv) imprudently
managing the Yield Plus Fund; (v) failing to disclose the dramatic changes that SSgA
implemented in the investment strategy of the Yield Plus Fund between 2000 and 2007;
(vi) failing to disclose that the stability of the Yield Plus Fund became materially
compromised over time; and (vii) failing to disclose that its investment approach became
significantly more aggressive over time and that SSgA ultimately abandoned its stated
objectives and invested the Yield Plus Fund in low-quality, highly risk securities in a
futile effort to improve the Yield Plus Fund's performance.

119.    Contrary to its duties and obligations under ERISA, CitiStreet breached its
fiduciary obligation to act in a prudent and loyal manner by, among other things and

without limitation, (i) misrepresenting the Yield Plus Fund as tantamount to a money

market fund but with better returns; (ii) misrepresenting the nature of and true investment

risk of the Yield Plus Fund; (iii) including the Yield Plus Fund as an investment option of

the F.W. Webb 401(k) Plan, and allowing the Yield Plus Fund to continue to be included

in the investment menu over time; (iv) failing to disclose the imprudent management of

the Yield Plus Fund; (v) failing to disclose the dramatic changes that SSgA implemented

in the investment strategy of the Yield Plus Fund between 2000 and 2007; (vi) failing to

disclose that the stability of the Yield Plus Fund became materially compromised over

time; and (vii) failing to disclose that the investment approach became significantly more

aggressive overtime and that SSgA ultimately abandoned its stated objectives and

invested the Yield Plus Fund in low-quality, highly risk securities in a futile effort to

improve the Yield Plus Fund's performance.  CitiStreet is responsible directly for not

only its breach of its fiduciary obligations, but also for the breaches of fiduciary

obligations committed by its predecessors, State Street Bank and SSgA.

120.    Defendants also breached their respective duties as co-fiduciaries under

ERISA § 405(a) by, among other things and without limitation, (i) knowingly

participating in. or knowingly undertaking affirmative actions or omissions, to conceal

each other's breaches of fiduciary duty; (ii) enabling each other to commit a fiduciary

breach by breaching its own fiduciary duties; and/or (iii) knew or should have known

about each other's breaches of fiduciary duty and failed to make reasonable efforts under

the circumstances described above to correct it.

121.    As a consequence of Defendants' breaches of fiduciary duties alleged herein, Plaintiffs suffered millions of dollars in losses to assets invested in the Yield Plus Fund.

122.    Defendants are liable for these losses because they were caused by Defendants' breaches of fiduciary duty alleged herein.

123.    Had the Defendants properly discharged their fiduciary duties, the F.W. Webb 401(k) Plan in general and the Yield Plus Fund in particular would have avoided some or all of the substantial losses suffered.

124.    The Defendants breached their fiduciary duties in that they, among other things and without limitation, knew, or should have known, the facts as alleged above, and therefore knew, or should have known, that the Yield Plus Fund should not have been included as an investment option in the F.W. Webb 401(k) Plan and the Yield Plus Fund's assets should not have been invested in mortgage-backed instruments, or otherwise invested improperly as described herein.

125.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes the Secretary of Labor, or a participant, beneficiary or fiduciary of a plan to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary…who breaches any of the …duties imposed upon fiduciaries…to make good to such plan any losses to the plan…"  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate…"

126.    With respect to calculation of the losses to the Yield Plus Fund, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the F.W. Webb 401(k) Plan would not have made or maintained their investments in the

challenged investment and, instead, prudent fiduciaries would have invested the F.W. Webb 401(k) Plan's assets prudently and appropriately, and in this instance, according to the stated objective of the F.W. Webb 401(k) Plan in general and the represented investment strategy of the Yield Plus Fund in particular.  In this way, the remedy restores the F.W. Webb 401(k) Plan's lost value and puts the participants in the position they would have been in if the F.W. Webb 401(k) Plan had been prudently invested.

127.    Plaintiffs, on behalf of the F.W. Webb 401(k) Plan and its participants, are therefore entitled to relief from the Defendants in the form of:  (a) a monetary payment to the F.W. Webb 401(k) Plan, which offered the Yield Plus Fund, to make good to the F.W. Webb 401(k) Plan the losses resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a), 502(a)(2) and (3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (3);  (c) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), and other applicable law; (d) taxable costs and interests on theses amounts, as provided by law; and (e) such other legal or equitable relief as may be just and proper.

128.    Under ERISA, each Defendant is jointly and severally liable for the losses suffered in this case.

### COUNT II
**COMMON LAW FRAUD AND FRAUD BY NON-DISCLOSURE**
**(AGAINST STATE STREET BANK, SSgA AND CITISTREET)**

129.    Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

130.    Defendants together and separately made material misstatements and misrepresentations of material facts and deliberately failed to disclose other material facts to Plaintiffs, with the intent to mislead Plaintiffs and to induce Plaintiffs' reliance and action at the time those representations and omissions were made.  Those misrepresentations and omissions included those alleged above.

131.    Defendants, through the actions of its affiliates, employees and agents, embarked on a pattern of continuous and repeated misrepresentations and deceit in order to induce Plaintiffs to, among other things, include the Yield Plus Fund in F.W. Webb 401(k) Plan's investment menu and to retain the Yield Plus Fund as part of the investment menu over time.

132.    Moreover, upon information and belief, Defendants embarked on this pattern of continuous and repeated misrepresentations and deceit in order to, among other things, not disclose that sometime between 2000 and 2007, the Yield Plus Fund had abandoned its represented conservative investment strategy and was no longer invested in high-quality, conservative financial instruments and securities, but instead was primarily invested in low-quality, asset-backed securities.

133.    In justifiable reliance on the misrepresentations made by Defendants, as alleged above, Plaintiffs were induced, among other things, to include the Yield Plus Fund in the F.W. Webb 401(k) Plan's investment menu and to retain the Yield Plus Fund in the investment menu over time, all as intended by the Defendants.

134.    As a result of the misrepresentations and fraudulent nondisclosures and omissions made by Defendants, Plaintiffs suffered and continue to suffer substantial damages.

## COUNT III
### NEGLIGENT MISREPRESENTATION
### (AGAINST STATE STREET BANK, SSgA AND CITISTREET)

135.    Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

136.    Defendants together and separately made repeated misrepresentations to Plaintiffs including those alleged above.

137.    Defendants had a duty to determine whether those representations were true.  Defendants acted carelessly, negligently and recklessly in making these representations and breached that duty to Plaintiffs.

138.    Plaintiffs reasonably relied on the above-referenced representations to their detriment.

139.    As a result of the misrepresentations made by Defendants, Plaintiffs suffered and continue to suffer substantial damages which were directly and proximately caused by Defendants' breach of duty and negligent misrepresentations.

## COUNT IV
### NEGLIGENCE
### (AGAINST STATE STREET BANK, SSgA and CITISTREET)

140.    Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

141.    Defendants each owed duties of care, skill and judgment, and honest disclosure, as well as a duty to follow the instructions of Plaintiffs with respect to the investment options for the F.W. Webb 401(k) Plan, whereby Plaintiffs made clear to Defendants that it wanted to include a money market fund as an investment option.

142.    By, among other things, representing the Yield Plus Fund as tantamount to a money market fund and by permitting Plaintiffs' assets to be invested in the Yield Plus

Fund, despite the Yield Plus Fund's change to high-risk, low quality investments,

Defendants each breached their duties to Plaintiffs.  In addition, State Street Bank is

liable to Plaintiffs for negligence because, upon information and belief, it had actual

knowledge of the true investment risk of the Yield Plus Fund but proceeded nonetheless

in conscious indifference to Plaintiffs and failed to disclose material information to

Plaintiffs.

143.    As a direct and proximate result of Defendants' respective breach of

duties, Plaintiffs have suffered and continue to suffer, substantial damages.

COUNT V
VIOLATIONS OF M.G.L. c. 93A
(AGAINST STATE STREET BANK, SSgA and CITISTREET)

145.    Plaintiffs repeat and reallege each of the allegations set forth in the

foregoing paragraphs as if fully set forth herein.

146.    At all relevant times hereto, Defendants were engaged in trade or business

in the Commonwealth of Massachusetts within the meaning of Mass. G.L. c. 93A, §§ 2, 9

and 11.

147.    Defendants' actions and practices, including but not limited to the

repeated and continuous intentional and/or reckless misrepresentations and fraudulent

nondisclosures and omissions as alleged above all constitute unfair and deceptive acts

and practices in violation of Mass. G.L. c. 93A, §§ 2, 9 and 11.

148.    The above-described actions and practices were willful and intentional.

149.    The above-described actions and practices occurred primarily and

substantially in Massachusetts.

150.     By letters dated March 28, 2008, Plaintiffs, by and through its counsel, made a formal demand for payment and relief from Defendants pursuant to Mass. G.L. c. 93A for the unfair and deceptive acts and practices of Defendants in connection with the F.W. Webb 401(k) Plan, among other things.  None of the Defendants responded to the demand letters within the 30-day statutory period or made any offer, much less a reasonable offer, of settlement.

151.     The failures by Defendants to respond timely and make reasonable offers of settlement constitute separate unfair and deceptive acts and practices in violation of Mass. G.L. c. 93A.

152.     As a direct result of the above-described conduct and willful violations of Mass. G.L. c. 93A, Plaintiffs have suffered and will continue to suffer substantial damages.

<u>COUNT VI</u>
Violation of the Massachusetts Securities Act
(AGAINST STATE STREET BANK, SSgA and CITISTREET)

153.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

154.     Defendants misrepresented the Yield Plus Fund as tantamount to a money market fund.  Upon information and belief, Defendants knew or should have known that the Yield Plus Fund was not tantamount to a money market fund, but rather was an ultra short bond fund that over time invested in high-risk, low-quality financial instruments.

155.     Therefore, Defendants also committed violations of the Massachusetts securities laws by, among other things and without limitation, directly selling or offering for sale securities or indirectly through their parent corporation and/or parent corporation

affiliates, without disclosing to Plaintiffs the material facts regarding the transactions.

Specifically, Defendants misrepresented the Yield Plus Fund as tantamount to a money

market fund.  Defendants further advised Plaintiffs to invest assets of the F.W. Webb

401(k) Plan in the Yield Plus Fund by misrepresenting the true investment strategy of the

Yield Plus Fund, which in reality invested in high-risk, low-quality, asset-backed

securities.  In so doing, Defendants engaged in the sale of securities by means of either

untrue statements or omissions of material facts which are necessary in order to make the

statements made, in light of all circumstances, not misleading.

156.    As damages for violations of the Uniform Securities Act, Massachusetts

General Laws c. 110A, Plaintiffs are entitled to recover all consideration paid and the

amount invested plus 6% interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    A Declaration that the Defendants, and each of them, have breached their

ERISA fiduciary duties to the F.W. Webb 401(k) Plan and its participants and

beneficiaries;

B.    A Declaration that the Defendants, and each of them, are not entitled to

the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104 (c)(1)(B);

C.    An Order compelling the Defendants to make good to the F.W. Webb

401(k) Plan for all losses resulting from Defendants' breaches of their fiduciary duties,

including losses to the F.W. Webb 401(k) Plan resulting from the imprudent investment

of the F.W. Webb 401(k) Plan's assets, and to restore to the F.W. Webb 401(k) Plan all

profits the Defendants made through use of the F.W. Webb 401(k) Plan assets, and to

restore to the F.W. Webb 401(k) Plan all profits which the participants would have made if the Defendants had fulfilled their respective fiduciary obligations;

D.      Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the F.W. Webb 401(k) Plan as the result of breaches of fiduciary duty;

E.      Actual damages in the amount of any losses to the F.W. Webb 401(k) Plan, to be allocated among the participants' individual accounts within the plans in proportion to the accounts' losses as required by ERISA;

F.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

G.      An Order awarding attorneys' fees;

H.      An Order for equitable restitution and other appropriate equitable and injunctive relief against the Defendants; and

I.      Granting such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Respectfully submitted,

By its attorneys,

Dated:  August 18, 2008

/s/ David E. Lurie
David E. Lurie, BBO# 542030
Thomas E. Lent, BBO# 644970
Sara A. Laroche, BBO# 652479
Lurie & Krupp, LLP
One McKinley Square
Boston, MA  02109
Telephone (617) 367-1970
Facsimile: (617) 367-1971
Email: dlurie@luriekrupp.com
Email: tlent@luriekrupp.com
Email: slaroche@luriekrupp.com