# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| F.W. WEBB COMPANY, ROBERT A.<br>MUCCIARONE, CHARLES SLATTERY III,<br>and EDWARD WELCH, as members of the<br>F.W. WEBB COMPANY SAVINGS &<br>PROFIT SHARING PLAN COMMITTEE,<br>and THE F.W. WEBB COMPANY SAVINGS<br>& PROFIT SHARING PLAN, on behalf of<br>the Plan and participants thereof,<br><br>        Plaintiffs,<br><br>    v.<br><br>STATE STREET BANK AND TRUST<br>COMPANY, STATE STREET GLOBAL<br>ADVISORS and CITISTREET, LLC,<br><br>        Defendants. | CIVIL ACTION<br>No. 08-cv-11422-NMG |

## MEMORANDUM OF LAW IN SUPPORT OF
## STATE STREET'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................2

I.  ALL CLAIMS AGAINST STATE STREET NOT BASED UPON ITS
    STATUS AS DIRECTED TRUSTEE FOR THE PLAN ARE TIME BARRED .............2

II. PLAINTIFFS FAIL TO STATE AN ERISA CLAIM FOR BREACH OF
    FIDUCIARY DUTY AGAINST STATE STREET .........................................................6

    A.  SSBT Is Not Liable For Alleged Breaches Of Fiduciary Duty In Its
        Capacity As Directed Trustee.......................................................................6

    B.  State Street Is Not Liable As An Investment Advisor Fiduciary.............................9

    C.  Plaintiffs Fail To Establish Co-fiduciary Liability For State Street ......................10

III. COUNTS II THROUGH V OF PLAINTIFFS' COMPLAINT ARE
     PREEMPTED BY ERISA .............................................................................................11

IV. PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW .....................11

    A.  Plaintiffs Cannot Establish Reasonable Reliance As A Matter Of Law.................12

        1.  Plaintiffs' reliance on misrepresentations or omissions concerning
            the Alleged 1996 Statements is unreasonable as a matter of law .................12

    B.  Plaintiffs Fail To State A Claim For Fraud, Negligent Misrepresentation,
        And Violation Of Massachusetts Uniform Securities Act § 410............................15

    C.  Plaintiffs Fail to Plead Fraud With Particularity .....................................................15

        1.  Plaintiffs' misrepresentation claims are not pled with particularity. .............16

        2.  Plaintiffs' non-disclosure claims are not pled with particularity .................17

    D.  Plaintiffs' Negligence Claim Is Barred By The Economic Loss Rule ...................18

CONCLUSION.....................................................................................................................18

CERTIFICATE OF SERVICE .............................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*20 Atlantic Ave. Corp. v. Allied Waste Indus.*,
    482 F. Supp. 2d 60 (D. Mass. 2007) .......................................................................................15

*Alton v. Prudential-Bache Securities, Inc.*,
    753 F. Supp 39 (D. Mass. 1990) ..............................................................................................5

*Alves v. Siegel's Broadway Auto Parts, Inc.*,
    710 F. Supp. 864 (D. Mass. 1989) ...........................................................................................4

*Associates in Adolescent Psychiatry v. Home Life Ins. Co.*,
    729 F. Supp. 1162 (N.D. Ill. 1989) ..........................................................................................3

*Basso Securities Ltd. v. Interstate Bakeries Corp.*,
    No. 3:01CV575, 2002 WL 32255352 (D. Conn. Jan. 18, 2002) ...........................................13

*Beddall v. State Street Bank and Trust Co.*,
    137 F.3d 12 (1st Cir. 1998) ............................................................................................7, 8, 9

*Bell Atlantic v. Twombly*,
    127 S. Ct. 1955 (2007) ...........................................................................................................11

*Bell v. Pfizer, Inc.*,
    499 F. Supp. 2d 404 (S.D.N.Y. 2007) ...................................................................................12

*Berkshire-Westwood Graphics Group, Inc. v. Davidson*,
    No. 06-WAD-13, 2007 WL 4119215 (Mass. App. Div. Nov. 16, 2007) ...............................12

*Brown v. Sweeney*,
    526 F. Supp. 2d 126 (D. Mass. 2007) ....................................................................................11

*Carlo v. Reed Rolled Thread Die Co.*,
    49 F.3d 790 (1st Cir. 1995)....................................................................................................11

*Clorox Co. Puerto Rico v. Proctor & Gamble*,
    228 F.3d 24 (1st Cir. 2000)..................................................................................................5, 8

*Damon v. Moore*,
    520 F.3d 98 (1st Cir. 2008)....................................................................................................11

*Deisenroth v. Numonics Corp.*,
    997 F. Supp 153 (D. Mass. 1998) ............................................................................................5

*Difelice v. U.S. Airways, Inc.*
397 F. Supp. 2d 735 (E.D. Va. 2005) ...........................................................7, 9, 10

*Dudley Supermarket, Inc. v. Transamerica Life Ins. and Annuity Co.*,
302 F.3d 1 (1st Cir. 2002) .............................................................................9, 11

*Edes v. Verizon Communications, Inc.*,
417 F.3d 133 (1st Cir. 2005) .................................................................................5

*Epstein v. C.R. Bard, Inc.*,
460 F.3d 183 (1st Cir. 2006) .................................................................................5

*Estate of Dermandy v. Eastman Kodak Co.*,
136 F. Supp. 2d 181 (W.D.N.Y. 2001) ................................................................12

*Gooley v. Mobil Oil Corp.*,
851 F.2d 513 (1st Cir. 1988) ...............................................................................11

*Guo v. Datavantage Corp.*,
No. 07-40051-FDS, 2008 WL 660338 (D. Mass. 2008) .............................15, 16, 17

*Herman v. NationsBank Trust Co.*,
126 F.3d 1354 (11th Cir. 1997) .............................................................................7

*Hotz v. Blue Cross & Blue Shield of Mass.*,
292 F.3d 57 (1st Cir. 2002) .................................................................................11

*Hunt v. Alliance North American Gov. Income Trust Inc.*,
159 F.3d 723 (2d Cir. 1998)..........................................................................13, 14

*In re Cardinal Health, Inc.*,
424 F. Supp. 2d 1002 (S.D. Ohio 2006) .................................................................9

*In re Computervision Corp. Sec. Litig.*,
869 F. Supp. 56 (D. Mass. 1994) .........................................................................15

*In re RCN Litigation*,
No. 04-5068, 2006 WL 1273834 (D.N.J. March 22, 2006)....................................10

*In re TJX Cos. Retail Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. 2007)..........................................................................12

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*,
76 F.3d 1245 (1st Cir. 1996)......................................................................4, 13, 14

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*,
510 U.S. 86 (1993).................................................................................................3

*Kling v. Fidelity Management Trust Co.*,
   323 F. Supp. 2d 132 (D. Mass. 2004) ..................................................................6, 9

*Kravetz v. United States Trust Co.*,
   941 F. Supp 1295 (D. Mass. 1996) ..........................................................................4

*Kuwaiti Danish Comp. Co. v. Digital Equip. Co.*,
   781 N.E.2d 787 (Mass. 2003) ................................................................................12

*Lalonde v. Textron, Inc.*,
   369 F.3d 1 (1st Cir. 2004) ........................................................................................6

*Maggio v. Gerard Freezer & Ice Co.*,
   824 F.2d 123 (1st Cir. 1987) ....................................................................................5

*Marram v. Kobbrick Offshore Fund, LTD.*,
   809 N.E.2d 1017 (Mass. 2004) ................................................................................5

*Masso v. United Parcel Service of America, Inc.*,
   884 F. Supp. 610 (D. Mass. 1995) ........................................................................12

*McMunn v. Pirelli Tire, LLC*,
   161 F. Supp. 2d 97 (D. Conn. 2001) ....................................................................12

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ..............................................................................................10

*Olsen v. Bell Telephone Laboratories, Inc.*,
   445 N.E.2d 609 (Mass. 1983) ..................................................................................5

*Pearce v. The Duchesneau Group, Inc.*,
   392 F. Supp. 2d 63 (D. Mass. 2005) ................................................................15, 16

*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987) ................................................................................................11

*Rodi v. Southern New England School of Law*,
   389 F.3d 5 (1st Cir. 2004) ......................................................................................12

*Shapiro v. Miami Oil Producers, Inc.*,
   84 F.R.D. 234 (D. Mass. 1979) ..............................................................................15

*Todisco v. Verizon Communications, Inc.*,
   497 F.3d 95 (1st Cir. 2007) ....................................................................................10

*Torchetti v. International Business Machines Corp.*
   986 F. Supp. 49 (D. Mass. 1997) ..........................................................................15

*Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*,
    524 F.3d 315 (1st Cir. 2008) ................................................................2

*Turner v. Johnson & Johnson*,
    809 F.2d 90, 95 (1st Cir. 1986) ........................................................15

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004) ................................................15, 16, 17

## STATUTES

15 U.S.C. § 80a-1 et seq. ...............................................................10

29 U.S.C. § 1002(21) ........................................................................7

29 U.S.C. § 1101(b)(1) ......................................................................3

29 U.S.C. § 1105(a) .........................................................................10

29 U.S.C. § 1113 ...........................................................................3, 5

M.G.L.A. 93A ...............................................................................3, 5

M.G.L.A. 110A § 410(e) ...................................................................4, 5

M.G.L.A. 260 § 2A ..........................................................................3, 5

M.G.L.A. 260 §5A ............................................................................3

## OTHER AUTHORITIES

17 C.F.R. § 270.30b1-5 .....................................................................13

Fed. R. Civ. P. 9(b) ..............................................................15, 16, 17

Fed. R. Civ. P. 12(b)(6)....................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiffs are named fiduciaries of the F.W. Webb 401(k) Plan (the "Plan") who bring this action to recover investment losses sustained by the Plan in the SSgA Yield Plus mutual fund (the "Yield Plus Fund" or "Fund") during the recent period of unprecedented financial market turmoil. The Yield Plus Fund, one of an established category of mutual funds known as "ultra-short bond funds", was first selected by the plaintiffs for inclusion in the Plan's investment menu in 1996. Having enjoyed favorable returns in the Fund for some eleven years before the 2007 market downturn, plaintiffs now allege that they were misled all this time into believing that the Fund was actually a *money market* fund rather than an ultra-short bond fund, and that they did not know the Fund invested in mortgage-backed securities. Plaintiffs make these claims despite the fact that the Fund's prospectuses and fact sheets received by the plaintiffs stated expressly that the Fund was *not* a money market fund and that it invested in mortgage-backed securities.

Defendants are not the investment managers of the Yield Plus Fund. Instead, defendants are merely service providers to the Plan, with narrowly defined administrative roles. Defendant State Street Bank and Trust Company ("SSBT") serves as the Plan's "directed trustee," and in this role carries out transactions for the Plan based on the instructions of the Plan's named fiduciaries – the plaintiffs. Defendant State Street Global Advisors ("SSgA"), a division of SSBT, previously served as the Plan's recordkeeper/administrator, a role that was assumed in April 2000 by defendant CitiStreet LLC ("CitiStreet"). In the Complaint, plaintiffs assert various ERISA and tort claims based on alleged investment advice from the defendants in connection with the Plan's investments in the Yield Plus Fund beginning in 1996. As the written service agreements between the Plan and defendants make clear, however, the defendants' administrative roles for the Plan did *not* include providing investment advice. Moreover,

plaintiffs do not even allege that State Street provided investment advice after 2000.

The Complaint's claims against SSBT and SSgA (collectively, "State Street") fail as a matter of law for a number of reasons.  First, the Complaint concedes that State Street's only role vis-à-vis the Plan since April 2000 – when CitiStreet took over as recordkeeper/administrator – has been as directed trustee.  Accordingly, all claims against State Street based upon any role *other* than directed trustee are barred by the applicable statutes of limitation, none of which reaches back as far as April 2000.

The only potentially timely claims against State Street – those based on SSBT's ongoing role as directed trustee – also fail as a matter of law.  ERISA case law makes clear that the fiduciary duties that plaintiffs would impose on State Street do not apply to a directed trustee. Plaintiffs' attempt to paint State Street as an investment advisor fiduciary is baseless; the service agreements cited in the Complaint demonstrate clearly that discretion over the Plan's investments remained at all times in the hands of the plaintiffs, not State Street.

Plaintiffs' hodgepodge of state law claims likewise fail for a variety of reasons.  Most of the claims are preempted by ERISA.  Those sounding in fraud and misrepresentation are not pled with sufficient particularity to withstand a motion to dismiss.

## ARGUMENT

### I.    ALL CLAIMS AGAINST STATE STREET NOT BASED UPON ITS STATUS AS DIRECTED TRUSTEE FOR THE PLAN ARE TIME BARRED

A motion to dismiss should be granted when, accepting as true the factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, a complaint fails to state facts sufficient to establish a "claim to relief that is plausible on its face."  *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 319-20 (1st Cir. 2008) (citation and internal quotations omitted).  Affirmative defenses, such as the statute of limitations, may be raised in a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense are clear on the face of plaintiffs' pleadings. *Id.* Plaintiffs allege claims against State Street for (i) breaches of fiduciary duty under ERISA, (ii) fraud, (iii) negligent misrepresentation, (iv) negligence, (v) violation of M.G.L.A. Chapter 93A, and (vi) violation of Section 410 of the Massachusetts Uniform Securities Act. All claims against State Street relating to its alleged provision of investment advice or its alleged misrepresentations or omissions, however, are barred by the applicable statutes of limitations.[1]

Plaintiffs do not allege any post-2000 misrepresentations or omissions by State Street, or that State Street provided investment advice to the Plan after CitiStreet was formed in 2000. The Complaint acknowledges that, after it was formed in 2000, CitiStreet provided plaintiffs with the recordkeeping and administrative functions that had previously been performed by State Street. Compl. ¶ 39. It is only these functions that form the basis for plaintiffs' allegations of imprudent investment advice from any defendant after 2000.[2] *Id.* Consequently, all post-2000 conduct alleged against State Street can concern only its limited role as directed trustee to the Plan.

Plaintiffs' claims against State Street based on conduct alleged to have occurred before CitiStreet was formed in 2000 are time barred. The longest statute of limitations applicable to any of plaintiffs' claims is six years. *See* 29 U.S.C. § 1113 (maximum six-year statute of limitations for violations of ERISA); M.G.L.A. 260 § 2A (three-year statute of limitations for

---

[1] The Complaint also suggests – without directly alleging – claims based on the alleged mismanagement of the Fund. However, any such claims would fail because the defendants named in this action have no responsibility for managing the Fund. The Yield Plus Fund is a registered mutual fund; its operations, including investment management and public disclosures, are performed by registered entities not named in the Complaint. *See* Skinner Decl. ¶ 2, Exhibit ("Exh."). A at 39 (2005 Prospectus). Moreover, under 29 U.S.C. § 1101(b)(1), the underlying assets of a registered mutual fund like the Yield Plus Fund are not considered ERISA "plan assets," so the registered fund manager cannot be held liable under ERISA for imprudently managing such underlying assets. *See, e.g., John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 96 (1993); *Associates in Adolescent Psychiatry v. Home Life Ins. Co.*, 729 F. Supp. 1162, 1182 (N.D. Ill. 1989).

[2] State Street disputes that it ever provided investment advice for a fee to the Plan, but it is not necessary for the court to address this issue given that any such "advice" would necessarily have been rendered prior to 2000.

Massachusetts tort liability); M.G.L.A. 260 §5A (four-year statute of limitations for violation of M.G.L.A. c. 93A); M.G.L.A. 110A § 410(e) (four-year statute of limitations for violation of the Massachusetts Securities Act).[3]

There is no basis for plaintiffs to assert that any of these limitations periods were tolled. Since at least 1995, the Fund's publicly filed prospectuses have made clear both that the Fund (i) is not a money market fund, and (ii) invests in mortgage-backed securities.  *See* Skinner Decl. ¶ 3, Exh. B at 5 (Fund prospectus dated December 29, 1995 (the "1995 Prospectus") disclosing that Fund invests in asset-backed securities and mortgage-related pass-through securities).[4] Moreover, beginning in 1999, the prospectuses for the Fund explicitly stated that the Fund "is not a money market fund and the price of this fund may fluctuate."  *Id.* at ¶ 4, Exh. C at 3 (1999 Prospectus).  *See also id.* at ¶ 2, 5-9, Exhs. A at 5 (2005 Prospectus), D at 3 (2000 Prospectus), E at 3 (2001 Prospectus), F at 5-6 (2002 Prospectus), G at 4 (2003 Prospectus), and H at 5 (2004 Prospectus) (stating that "unlike a money market fund," the price of the fund may fluctuate because the fund may invest in securities with higher levels of risk and different maturities).  As a result, to the extent any alleged 1996 statement was not true, or became misleading, plaintiffs had constructive notice that the investment strategy of the Fund had been "misrepresented" as early as 1996, but no later than 1999.  *See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255-56 (1st Cir. 1996) (holding that prospectuses contradicting alleged misrepresentations put ERISA plaintiffs on constructive notice of alleged fraud); *Kravetz v. United States Trust Co.*, 941 F. Supp 1295, 1309 (D. Mass. 1996) (holding that offering

---

[3] Massachusetts law applies to plaintiffs' claims for fraud and negligent misrepresentations because Massachusetts has the most significant relationship to the claims.  Plaintiffs and all three defendants have offices in Massachusetts and conduct the conduct described in the Complaint is alleged to have occurred primarily and substantially in Massachusetts. Compl. ¶ 149.  *See also Alves v. Siegel's Broadway Auto Parts, Inc.*, 710 F. Supp. 864, 870-71 (D. Mass. 1989) (in tort actions, Massachusetts applies the law of the place where the injury occurred unless a different jurisdiction has a more significant interest).

[4] The 1995 Prospectus was available when plaintiffs first invested in the Yield Plus Fund in 1996.

documents contradicting alleged actionable misrepresentations placed plaintiffs on constructive notice of Massachusetts tort claims); *Marram v. Kobbrick Offshore Fund, LTD*., 809 N.E.2d 1017, 1027 & n.20 (Mass. 2004) (explaining that the Massachusetts Securities Act contains a restrictive limitations period that holds plaintiffs to inquiry notice "from the time a reasonable investor would have noticed something was 'amiss,' *e.g.* when he obtained a prospectus") (citation omitted); *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 130-131 (1st Cir. 1987) (holding that, although Massachusetts tort law permits the tolling of claims that are either undiscovered or fraudulently concealed, such tolling ceases if a party could have discovered the factual basis for the cause of action through reasonable diligence or had available the means to discover fraudulent concealment). Accordingly, no applicable statute of limitation should be tolled.[5]

The maximum "reach back" possible for any of plaintiffs' claims is therefore August 18, 2002, six years prior to the filing of the Complaint. Plaintiffs' claims against State Street based on pre-2002 conduct are barred by each applicable statute of limitations.[6] Consequently, the court should dismiss all claims against State Street not based on its status as a directed trustee since on or after August 18, 2002 as untimely. And, as set forth below, the claims against State

---

[5] A court may consider the Fund's prospectuses in ruling on this motion to dismiss, even though they are not attached to the Complaint, because the prospectuses are integral to plaintiffs' claims that defendants misrepresented the investment strategy of the Fund. *Clorox Co. Puerto Rico v. Proctor & Gamble*, 228 F.3d 24, 32 (1st Cir. 2000) (court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.") (citations and internal quotations omitted).

[6] *See Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187-88, 191 (1st Cir. 2006) (affirming dismissal of Massachusetts state law claims including claim of negligent misrepresentation and claim under M.G.L.A. 93A as time barred by M.G.L.A. 260 §§ 2A, 5A); *Edes v. Verizon Communications, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005) (affirming dismissal of claim of breach of fiduciary duty under ERISA as time barred under 29 U.S.C.A. § 1113); *Alton v. Prudential-Bache Securities, Inc.*, 753 F. Supp 39, 41 (D. Mass. 1990) (applying the statute of limitations of the Mass. Securities Act (M.G.L.A. 110A § 410(e)) to dismiss analogous federal claim as time barred); *Deisenroth v. Numonics Corp.*, 997 F. Supp 153, 156 (D. Mass. 1998) (applying M.G.L.A. 260 § 2A to dismiss Massachusetts common law fraud claim as time barred); *Olsen v. Bell Telephone Laboratories, Inc.*, 445 N.E.2d 609, 612 (Mass. 1983) (applying M.G.L.A. 260 § 2A to dismiss negligence claim as time barred).

Street as a directed trustee must be dismissed as well.

## II.    PLAINTIFFS FAIL TO STATE AN ERISA CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST STATE STREET

### A.    State Street Is Not Liable For Alleged Breaches Of Fiduciary Duty In Its Capacity As Directed Trustee

Plaintiffs' ERISA claim against State Street fails because it seeks to impose fiduciary duties that are inapplicable to State Street's limited role as a directed trustee under ERISA. Although the Complaint acknowledges that State Street's role after April 2000 was limited to that of directed trustee, it nevertheless seeks to impose heightened fiduciary obligations on State Street that are irreconcilable with State Street's statutorily and contractually limited duties. Dismissal of an ERISA claim pursuant to Rule 12(b)(6) is required where, as here, plaintiffs fail adequately to allege that the defendant assumed the particular fiduciary duty it allegedly violated at the time the violation occurred. *See, e.g.*, *Lalonde v. Textron, Inc.*, 369 F.3d 1, 7 (1st Cir. 2004) (analyzing claims against a plan sponsor and a directed trustee separately, and affirming the dismissal of claims against the directed trustee).

ERISA law and the parties' agreements carve out a strictly bounded role for a directed trustee. The limited scope of this relationship is defined in the Trust Agreement between SSBT and F.W. Webb first signed in 1997 and restated in 2002 (the "Trust Agreement"). *See* Skinner Decl. ¶ 10, Exh. I. In this role, State Street was responsible solely for executing plaintiffs' instructions; its discretion was limited solely to ensuring that those instructions were not contrary to ERISA or to the Plan. *See, e.g.*, *Kling v. Fidelity Management Trust Co.*, 323 F. Supp. 2d 132, 150 (D. Mass. 2004) (citing ERISA § 403(a) for the principle that a directed trustee incurs direct liability only where it "follow[s] orders contrary to ERISA or to the Plan"). Plaintiffs nowhere

assert that State Street executed instructions that were contrary to ERISA or to the Plan.[7]

Instead, plaintiffs' ERISA claim is predicated on assigning State Street broad fiduciary duties

concerning the disclosure of investment risks and strategy changes, and also apparently on a

theory that State Street should not have permitted plaintiffs to continue to include the Fund as

one of the Plan's investment options.  Under the parties' contract and ERISA law, it is clear that

State Street as a directed trustee owed plaintiffs no such duties.

Sections 3(21)(A)(i) and 3(21)(A)(iii) of ERISA (29 U.S.C. § 1002(21)) provide that

fiduciary duties are coextensive with discretionary authority.  Consequently, in the directed

trustee context, courts have routinely dismissed claims where, as here, plaintiffs seek to impose

duties that outstrip a directed trustee's limited role.  *See, e.g.*, *Beddall v. State Street Bank and

Trust Co.*, 137 F.3d 12, 20 (1st Cir. 1998); *Difelice v. U.S. Airways, Inc*. 397 F. Supp. 2d 735,

756-57 (E.D. Va. 2005) (dismissing an ERISA claim because "[a]s a directed trustee, [the

defendant's] primary duty was to follow the directions of the named fiduciary and of the plan

participants, except in extraordinary circumstances"); *see also*, *Herman v. NationsBank Trust

Co.*, 126 F.3d 1354, 1361-62, 1371 (11th Cir. 1997) (directed trustee was not required to exercise

"independent judgment," but only to "make sure the participants' directions were proper, in

accordance with the terms of the plan, and not contrary to ERISA").

In *Beddall v. State Street Bank and Trust Company*, 137 F.3d 12 (1st Cir. 1998), the First

Circuit affirmed the dismissal on a Rule 12(b)(6) motion of an ERISA claim that sought to

impose fiduciary liability regarding the valuation of plan assets against precisely the same

directed trustee here – State Street.  After analyzing the parties' contract in *Beddall*, the court

concluded that it effectively "strip[ped] any veneer of plausibility from the plaintiffs' bald

---

[7] Indeed, plaintiffs do not even refer to particular instructions given to State Street, let alone assert that such instructions were contrary to ERISA or to the Plan.

assertion that the Bank is a fiduciary subject to liability." *Id*. at 20.

The agreement in *Beddall* was nearly identical to the one in place here; as the court therein stated, "the starting point for reasoned analysis of the Bank's fiduciary status is the Agreement." *Id*. at 19.  Here, the parties' Trust Agreement clearly sets forth State Street's roles and responsibilities.[8]  The Agreement is explicit that, unless State Street affirmatively assumes investment management duties, it accepts no responsibility for the consequences of the Plan's investment decisions.  Skinner Decl. ¶ 10, Exh. I at § 3.1 (Trust Agreement).  The Agreement defines the investment management duties associated with each of the Plan's various types of accounts.  This is the portion of the contract that the court in *Beddall* held to be dispositive.  Because the contract in *Beddall* plainly delegated authority regarding the investment decisions at issue to an investment manager other than State Street, the court held that State Street had no fiduciary duty with respect to the propriety or evaluation of those decisions.  *Id*. at 19.

As in *Beddall*, the Trust Agreement here assigns investment management duties with respect to the fund at issue to parties other than State Street.  In the case of participant-directed brokerage accounts, client managed investment accounts, and investment manager accounts, the Agreement provides that:

> The Trustee shall have no liability (i) for the acts or omissions of any Investment Manager . . . ; (ii) for following directions, including investment directions of an Investment Manager (other than the Trustee) or the Client or named fiduciary . . . (iii) for failing to act in absence of Investment Manager direction; or (iv) for any loss of any kind which may result by reason of the manner of division of the Trust Fund or Investment

---

[8] The Trust Agreement is referenced in paragraphs 72-73 of the Complaint.  Accordingly, the Court can consider the content of this document without converting this motion into a motion for summary judgment.  *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998) (considering the entire terms of a contract at issue in complaint as part of motion to dismiss, and explaining that trial courts may consider such documents "[w]hen . . . a complaint's factual allegations are expressly linked to and . . . dependent upon" the contract); *Clorox Co. Puerto Rico v. Proctor & Gamble*, 228 F.3d 24, 32 (1st Cir. 2000) ("[I]t is well-established that in reviewing the complaint, we may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.").

Fund into Investment Accounts.

Skinner Decl. ¶ 10, Exh. I at § 3.1.  *Beddall* held that stipulations nearly identical to those quoted above precluded State Street's alleged fiduciary liability for failing to independently evaluate the Plan's investment decisions in that case, and the same result obtains here.

Moreover, although *Beddall* did not rule specifically on a directed trustee's disclosure duties, the court in *Kling* has since held that a directed trustee is not subject to direct fiduciary liability based on alleged non-disclosures.  *Kling*, 323 F. Supp. 2d at 150-51 (holding that a directed trustee had no direct fiduciary liability for omitting to disclose material information because plaintiffs' allegations did not establish that the trustee owed such a duty).  Furthermore, the Department of Labor has issued guidance endorsing the view that a directed trustee has neither an independent obligation to determine the prudence of plan transactions, nor an obligation to "duplicate or second guess the work of the plan fiduciaries that have discretionary authority over the management of plan assets."  *See* Dept. of Labor ("DoL"), Field Assistance Bulletin ("FAB") No. 2004-03 (Dec. 17, 2004); *see also Difelice*, 397 F. Supp. 2d at 751-52 (relying on FAB 2004-03 to dismiss a directed trustee liability claim); *In re Cardinal Health, Inc.*, 424 F. Supp. 2d 1002, 1038-39 (S.D. Ohio 2006) (same).

**B.      State Street Is Not Liable As An Investment Advisor Fiduciary**

Plaintiffs alternatively suggest that State Street may be liable as an investment advisor fiduciary under ERISA, but this approach also fails.  Pursuant to § 3(21)(A)(ii) of ERISA, a service provider may be deemed an investment advisor fiduciary where the provider renders to a plan "investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property."  Investment advice is defined in regulations as advice pertaining to "the value of securities or other property, or as to the advisability of investing in, purchasing, or selling securities or other property, where the advice is individualized and is rendered on a

regular basis pursuant to a mutual agreement for a fee." *Dudley Supermarket, Inc. v. Transamerica Life Ins. and Annuity Co.*, 302 F.3d 1, 3 (1st Cir. 2002) (citing 29 C.F.R. § 2510.3-21(c)).  This approach fails, however, because plaintiffs nowhere allege that State Street provided the Plan with investment advice for a fee after 2000 – when CitiStreet was formed to take over the administrative and recordkeeping functions (*see* Compl. ¶ 39) – and State Street plainly did not take on any duty to provide investment advice in the Trust Agreement.[9]

### C.     Plaintiffs Fail To Establish Co-fiduciary Liability For State Street

Plaintiffs assert that State Street is liable under ERISA § 405(a) (29 U.S.C. § 1105(a)) for the breaches of co-fiduciaries on the grounds that each defendant: (1) knowingly participated in or concealed the breaches of other defendants, (2) enabled other defendants to breach their duties by breaching its own, and (3) knew or should have known of the breaches of other fiduciaries and made efforts to correct them.  *See* Compl. ¶ 120.  Courts examining the issue of a directed trustee's co-fiduciary liability recently, however, have held that a directed trustee cannot be found liable for third-party co-fiduciary acts that are outside the scope of a directed trustee's duty.  *See Difelice v. U.S. Airways, Inc*. 397 F. Supp 2d 735, 757 (E.D. Va. 2005); *In re RCN Litigation*, No. 04-5068, 2006 WL 1273834, at *7-8 (D.N.J. March 22, 2006) (same).[10]  To hold otherwise would essentially read ERISA's limitation on the scope of a directed trustee's duty out of the statutory framework.  *Id*.[11]

---

[9] Although State Street also did not provide investment advice to the Plan prior to 2000, it is not necessary for the Court to address this issue since any claims arising from such "advice" are barred by the statute of limitations.

[10] This conclusion applies with even greater force here, where the alleged non-disclosures concern a registered mutual fund that is already subject to a rigorous disclosure regime under the Investment Company Act of 1940 (15 U.S.C. § 80a-1 et seq.) (the "40 Act").

[11] Plaintiffs claim under ERISA § 502(a)(3) for purported equitable remedies should be dismissed because plaintiffs seek monetary damages.  *See* Compl. at Prayer for Relief.  In *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993), the Supreme Court held that monetary damages such as those sought by Plaintiffs, fell outside the scope of equitable relief provided under § 502(a)(3).  The Court noted that "[a]lthough they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*, monetary relief for all losses their plan

## III.    COUNTS II THROUGH V OF PLAINTIFFS' COMPLAINT ARE PREEMPTED BY ERISA

Plaintiffs' state law claims contained in Counts II through V of the Complaint are also pre-empted by ERISA, and should be dismissed for that reason as well.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (fraud claim preempted); *Carlo v. Reed Rolled Thread Die Co*., 49 F.3d 790, 793-794 (1st Cir. 1995) (negligent misrepresentation claim preempted); *Dudley Supermarket Inc. v. Transamerica Life Ins*., 302 F.3d 1, 6 (1st Cir. 2002) (negligence claim preempted); *Hotz v. Blue Cross & Blue Shield of Mass*., 292 F.3d 57, 61 (1st Cir. 2002) (unfair and deceptive acts in violation of Chapter 93A claim preempted).  ERISA preemption is discussed more fully in CitiStreet's Motion to Dismiss at pages 13-16, which is adopted by State Street in its entirety.

## IV.    PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW

Dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate where, taking the allegations of the complaint as true, the plaintiff cannot as a matter of law demonstrate its entitlement to relief.  *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 & n.3 (2007); *Damon v. Moore*, 520 F.3d 98 (1st Cir. 2008) (affirming Rule 12(b)(6) dismissal where plaintiff failed to plead facts entitling him to relief).  Pursuant to Fed. R. Civ. P. 12(b)(6), the Court should dismiss plaintiffs' claims for fraud, negligent misrepresentation, and violation of Massachusetts Uniform Securities Act Section 410 for failure to state a claim because even when plaintiffs' allegations are taken as true, plaintiffs have not pled facts sufficient to support the elements their claims.  *See Brown v. Sweene*y, 526 F. Supp. 2d 126, 129 (D. Mass. 2007).  To

---

*(cont.)*

sustained as a result of the alleged breach of fiduciary duties.  Money damages are, of course, the classic form of *legal* relief." *Id*. at 255.  (Emphasis in original).  *Accord Todisco v. Verizon Communications, Inc.*, 497 F.3d 95 (1st Cir. 2007) (citing *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002)).  In those cases, as here, Plaintiffs' attempt to rephrase what are plainly damages claims in the language of equity cannot support a cause of action under § 502(a)(3).

survive a motion to dismiss, a complaint must support each element of a claim. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).   Plaintiffs' claims for fraud and violation of Chapter 93A also fail because plaintiffs have not pled fraud with the required particularity. Finally, plaintiffs' negligence claim is barred by the economic loss doctrine.

### A.     Plaintiffs Cannot Establish Reasonable Reliance As A Matter Of Law

#### 1.     Plaintiffs' reliance on misrepresentations or omissions concerning the alleged 1996 statements is unreasonable as a matter of law

Plaintiffs' claims for fraud and negligent misrepresentation fail as a matter of law because plaintiffs cannot establish reasonable reliance on the alleged misrepresentations or omissions, an essential element of their claim. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 16 (1st Cir. 2004) (reliance on a misrepresentation must be reasonable); *Masso v. United Parcel Service of America, Inc.*, 884 F. Supp. 610, 616 (D. Mass. 1995) (reliance must be reasonable to state a claim for negligent misrepresentation); *Berkshire-Westwood Graphics Group, Inc. v. Davidson*, No. 06-WAD-13, 2007 WL 4119215, at *3 (Mass. App. Div. Nov. 16, 2007) (reliance on alleged nondisclosure must be reasonable).[12]  Similarly, plaintiffs' Chapter 93A claim, which is based upon alleged misrepresentations and omissions concerning the Fund (*see* Compl. ¶ 147), also fails because reliance is unreasonable. *See In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 398 (D. Mass. 2007) (holding that reliance is a necessary element of Chapter 93A claim based on negligent misrepresentation).  The question of whether reliance is

---

[12] Plaintiffs' breach of fiduciary duty claim, to the extent it is based a misrepresentation or omission, also fails as a matter of law and should be dismissed because plaintiffs cannot prove reasonable reliance. *See In re Tyco Intern., Ltd.*, MDL Docket No. 02-1335-B, 2007 WL 1703023 at, *15 n.12 (D. N.H. June 11, 2007) (reasonable reliance is also an element of a breach of fiduciary duty claim that is based on a misrepresentation or omission); *see also Bell v. Pfizer, Inc.*, 499 F. Supp. 2d 404, 410 (S.D.N.Y. 2007) (to establish a breach of fiduciary duty under ERISA that is based on alleged misrepresentations plaintiff must show that a (1) defendant was acting in a fiduciary capacity and that (2) defendant made a material misrepresentation or omission (3) on which plaintiff relied to his detriment); *McMunn v. Pirelli Tire, LLC*, 161 F. Supp. 2d 97, 120 (D. Conn. 2001) (same). *Accord Estate of Dermandy v. Eastman Kodak Co.*, 136 F. Supp. 2d 181, 189 (W.D.N.Y. 2001).

reasonable may be resolved as a matter of law.  *See Kuwaiti Danish Comp. Co. v. Digital Equip. Co.*, 781 N.E.2d 787, 795-97 (Mass. 2003).

Plaintiffs' reliance on the alleged 1996 statements and defendants' alleged failure to disclose that the Fund was not tantamount to a money market fund (*see e.g.* Compl. ¶¶ 40, 48 and 53) is unreasonable as a matter of law because the written statements in the Fund's prospectuses clearly identify (i) that the Yield Plus Fund is not a money market fund and how it differs from a such a fund, and (ii) that the Fund invests in asset-backed and mortgage-backed securities.  Skinner Decl. ¶¶ 2-9 and 11-13, Exhs. A at 5, B at 5, C at 3, D at 3, E at 3, F at 5-6, G at 4, H at 5, J at 5, K at 5, and L at 5.  "An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." *Hunt v. Alliance North American Gov. Income Trust Inc.*, 159 F.3d 723, 730 (2d Cir. 1998) (citing *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993));  *see also J. Geils Band Employee Benefit Plan*, 76 F.3d at 1259-1260 (holding it was unreasonable to rely on information that was directly refuted by the plain text of prospectuses); *Basso Securities Ltd. v. Interstate Bakeries Corp.*, No. 3:01CV575, 2002 WL 32255352, at *4 (D. Conn. Jan. 18, 2002) (holding a motion to dismiss is properly granted for failure to allege reliance when an investor, "through minimal diligence, . . . should have discovered the truth.").  Similarly, plaintiffs' non-disclosure claims regarding changes in the Fund are precluded by the full list of holdings and assets published each quarter pursuant to Rule 30b1-5 of the Investment Company Act of 1940 (17 C.F.R. § 270.30b1-5).  Plaintiffs do not allege that the Fund violated these extensive disclosure requirements.

In *Hunt*, the district court dismissed a common law fraud claim finding that "no reasonable investor could have been misled by certain advertisements when read in conjunction

with the prospectuses and related offering materials." *Hunt*, 159 F.3d at 730.  The Court of

Appeals affirmed, holding that "[m]inimal diligence in this case would have included consulting

the prospectuses . . . the single most important document and perhaps the primary resource an

investor should consult in seeking . . . information about the Fund's risks." *Id*. (brackets

omitted).

Similarly, in this case, the 1995 prospectus, which was publicly available when plaintiffs

first added the Fund to the Plan's investment menu, clearly shows that the Fund is not a money

market fund, and invests in debt securities that include asset-backed securities and mortgage-

related pass-through securities.  Skinner Decl. at ¶ 3, Exh. B at 5.  Indeed, during each of the

twelve years between 1996 and 2007 in which the Plan was invested in the Fund, the Fund issued

a prospectus that described the types of investments made by the Fund.  *See* Skinner Decl. ¶¶ 2,

4-9 and 11-13, Exhs. A at 5, C at 3, D at 3, E at 3, F at 5-6, G at 4, H at 5, J at 5, K at 5, and L at

5.  In fact, beginning in 1999, the prospectus for the Fund explicitly states that the Fund "is not a

money market fund and the price of this fund may fluctuate"  (*see* Skinner Decl. ¶ 4, Exh. C at 3

(1999 Prospectus)) and "[u]nlike a money market fund, the price of the Yield Plus Fund will

fluctuate because of [sic] the fund may invest in securities with higher levels of risk and different

maturities."  *Id*.  Accordingly, the court should dismiss plaintiffs' fraud, negligent

misrepresentation and violation of Chapter 93A claims because plaintiffs' alleged reliance is

unreasonable as a matter of law.[13]

---

[13] Plaintiffs also cannot reasonably rely on any alleged statement in CitiStreet's 2006, First-Quarter Booklet (the "Booklet"), upon which plaintiffs base certain alleged misrepresentations (*see* Compl. ¶¶ 42-45).  In addition to the broad disclosures in the Fund's written prospectuses (see Skinner Decl. ¶¶ 2-9 and 11-13, Exhs. A at 5, B at 5, C at 3, D at 3, E at 3, F at 5-6, G at 4, H at 5, J at 5, K at 5, and L at 5) that show that the Fund is not a money market fund and invests in mortgage-related securities, the Booklet itself discloses that "unlike a money market fund, the price of the Yield Plus Fund may fluctuate from time to time because the fund may invest in securities with higher levels of risk and different maturities." Compl. ¶ 44.  *See Hunt*, 159 F.3d at 723 (finding reliance unreasonable because "no reasonable investor could have viewed this chart as an exhaustive description of the fund's risks"); *J. Geils Band,* 76 F.3d at 1259-1260.

**B.**     **Plaintiffs Fail To State A Claim For Fraud, Negligent Misrepresentation, And Violation Of Massachusetts Uniform Securities Act § 410**

Plaintiffs fail to plead a false statement, an essential element of its claims for fraud, negligent misrepresentation and violation of Massachusetts Uniform Securities Act Section 410. *See Turner v. Johnson & Johnson*, 809 F.2d 90, 95 (1st Cir. 1986); *20 Atlantic Ave. Corp. v. Allied Waste Indus.*, 482 F. Supp. 2d 60, 79 (D. Mass. 2007); *Pearce v. The Duchesneau Group, Inc.*, 392 F. Supp. 2d 63, 76 (D. Mass. 2005).  To the extent plaintiffs' claims for fraud, negligent misrepresentation, and violation of Section 410 are based upon the alleged 1996 statements, those claims fail because plaintiffs do not allege that any such statement was false when made.  In fact, the Complaint implies that the alleged 1996 statements were actually true when made and continued to be true until at least 2000 or 2001.  *See* Compl. ¶ 47 ("sometime in 2000 or 2001 . . . SSgA apparently abandoned the Yield Plus Fund's conservative investment strategy . . . .").  Plaintiffs' fraud claim also fails because they have not alleged that any statement was made with the requisite intent to deceive.  *Turner*, 809 F.2d at 95.  Accordingly, to the extent based on the alleged 1996 statements, plaintiffs' claims for fraud, negligent misrepresentation and violation of Section 410 should be dismissed for failure to state a claim.  *See, e.g.*, *Id.*

**C.**     **Plaintiffs Fail to Plead Fraud With Particularity**

Fed. R. Civ. P. 9(b) requires that fraud be alleged with particularity.  *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004).  Rule 9(b) states:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake should be stated with particularity."[14]  Fed. R. Civ. P. 9(b).  The "particularity" language of 9(b) requires,

---

[14] An ERISA breach of fiduciary duty claim that stems from an alleged fraud must also be pled with particularity. *See Torchetti v. International Business Machines Corp.* 986 F. Supp. 49, 51 (D. Mass. 1997).  *See also Shapiro v. Miami Oil Producers, Inc.*, 84 F.R.D. 234, 236 (D. Mass. 1979) (stating that Rule 9(b)'s particularity requirement "extends to averments of fraud or mistake, whatever may be the theory of legal duty -- statutory, tort, contractual, or fiduciary"); *In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 63 (D. Mass. 1994) (holding that Rule 9(b)'s particularity requirement applies whenever complaint "sounds in fraud").

among other things, that a plaintiff state the time, place, and content of the purportedly false or fraudulent statement. *See Guo v. Datavantage Corp*., No. 07-40051-FDS, 2008 WL 660338, at *5 (D. Mass. 2008) (citing *Rodi v. Southern New England School Of Law*, 389 F.3d 5, 15 (1st Cir. 2004)). While malice, intent, knowledge and other conditions of mind of a person may be averred generally, the complaint must set forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Guo*, 2008 WL 660338, at *5 (quoting *Greenstone v. Cambez Corp*., 975 F.2d 22, 25 (1st Cir. 1992)). Finally, plaintiffs must specifically explain how they detrimentally relied upon a misrepresentation. *Guo*, 2008 WL 660338, at *5.

### 1. Plaintiffs' misrepresentation claims are not pled with particularity

Plaintiffs alleged that, in 1996, Defendants described the Yield Plus Fund as "tantamount to a money market fund" and having "a capital preservation objective" *See e.g.* Compl. ¶¶ 18, 22-24 and 27-28. Plaintiffs have not attributed any alleged 1996 statement to a specific individual. Rather, plaintiffs refer to the defendants generally. *See e.g*., Compl. ¶¶ 18 (attributing statements as "State Street Bank's, SSgA's and State Street Solutions"); 21 (attributing statements to "State Street Bank, SSgA and State Street Solutions representatives"); 28 (attributing statements to "Defendant's representatives"). Statements attributed to "defendants" or a defendant's unnamed "representative" are insufficient to meet Rule 9(b)'s standards. *See Pearce v. The Duchesneau Group, Inc*., 392 F. Supp. 2d 63, 75 (D. Mass. 2005) (representations attributed to unidentified speakers are not actionable) (citation omitted).[15]

Plaintiffs also fail to allege when or where any alleged misrepresentation was made.

---

[15] The closest plaintiffs come to identifying a speaker is alleging that Messrs. Bob Quinn and Michael Barry were in attendance at a meeting in November of 1996 in which Mr. Mucciarone was told that the Yield Plus Fund was "essentially a money market fund that would provide better returns." Compl. ¶ 24. However, plaintiffs have not alleged who made that statement.

*See Karvelas*, 360 F.3d at 226 ("Rule 9(b) requires that a plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representations."). Instead, plaintiffs allege that misrepresentations were made during "the fall of 1996" (*see, e.g.*, Compl. ¶ 21) and during "meetings and presentations." *Id.* ¶ 22. Similarly, plaintiffs fail to allege when and where defendants' misrepresentations by omission occurred, other than that they occurred during "regular meetings." *See* Compl. ¶ 40.

Moreover, plaintiffs fail to allege any facts that would make it reasonable to believe that any defendant knew that a statement was materially false or misleading when made. *Guo*, 2008 WL 660338, at *5 (complaint must set forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading."). In fact, plaintiffs fail to plead that any person made a knowingly false statement.

### 2.     Plaintiffs' non-disclosure claims are not pled with particularity

Plaintiffs assert claims for fraud by nondisclosure against Defendants for allegedly failing to inform plaintiffs of a purported change in the investment strategy of the Fund that occurred in 2000 or 2001. *See*, *e.g*., Compl. ¶¶ 40 48, 53 and 66. Plaintiffs' non-disclosure claims also fail to meet the particularity requirement of Rule 9(b). In addition to failing to allege the specific time when the purported change in investment strategy occurred, plaintiffs do not allege how the Fund's investment strategy changed. Rule 9(b) requires that plaintiffs specify the types of investments the defendants represented the Fund would make and the specific investments that were made that did not comply with the stated strategy. *See Karvelas*, 360 F.3d at 226 (Rule 9(b) requires averments of fraud to specify the content of alleged false or fraudulent statements).

As a result, because the Complaint's claims sounding in fraud fail to "particularize" their allegations of fraudulent conduct, they do not comply with the particularity requirements of Rule 9(b) and should be dismissed.

**D.    Plaintiffs' Negligence Claim Is Barred By The Economic Loss Doctrine**

In Count IV, plaintiffs assert a claim for negligence based on defendants' alleged breaches of fiduciary duty under ERISA.  *See* Compl. ¶ 140-143.  However, the only damages that Plaintiffs allege are economic losses attributable to the performance of the Fund, not personal injury or property damages.  Compl. ¶¶ 70, 143.  Plaintiffs' claim fails because the economic loss doctrine bars negligence claims that seek to recover purely economic damages. *See* CitiStreet Motion to Dismiss at page 16.

## CONCLUSION

For the foregoing reasons, State Street respectfully requests that the Court enter an order dismissing the Complaint in its entirety.


Dated:  October 14, 2008                 Respectfully submitted,

                                         ROPES & GRAY LLP

                                         By: /s/ Harvey J. Wolkoff_____
                                         Harvey J. Wolkoff (BBO# 532880)
                                         Robert A. Skinner (BBO# 567862)
                                         One International Place
                                         Boston, MA  02110
                                         Tel: (617) 951-7000
                                         Fax: (617) 951-7050
                                         harvey.wolkoff@ropesgray.com
                                         robert.skinner@ropesgray.com

                                         *Attorneys for Defendants State Street Bank*
                                         *and Trust Company and State Street Global Advisors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to all registered participants.


<u>/s/ Robert A. Skinner</u>
Robert A. Skinner