# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| F.W. WEBB COMPANY, ROBERT A. MUCCIARONE, CHARLES SLATTERY III, and EDWARD WELCH, as members of the F.W. WEBB COMPANY SAVINGS & PROFIT SHARING PLAN COMMITTEE, and THE F.W. WEBB COMPANY SAVINGS & PROFIT SHARING PLAN, on behalf of the Plan and participants thereof, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION No. 08-cv-11422-NMG |
| v. | ) ) | Leave to File Granted on January 12, 2009 |
| STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL ADVISORS and CITISTREET, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
## STATE STREET'S MOTION TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY REPLY STATEMENT ......................................................................................1

ARGUMENT ........................................................................................................................2

I.    ALL CLAIMS AGAINST STATE STREET NOT BASED UPON ITS
STATUS AS DIRECTED TRUSTEE FOR THE PLAN ARE TIME BARRED ..............2

    A.    The Facts Necessary to Establish a Time Bar are Evident on the Face of
the Complaint............................................................................................................2

    B.    Plaintiffs Mischaracterize Alleged Affirmative Misrepresentations as
Omissions ................................................................................................................3

    C.    Plaintiffs Have No Valid Claim For Any Form of Equitable Tolling ......................4

        1.    The statute of limitations applicable to plaintiffs' ERISA claim is
not tolled. ...................................................................................................4

        2.    The statutes of limitations applicable to plaintiffs' state law claims
are not tolled...............................................................................................5

    D.    State Street is Not Contractually Liable for Any Investment Advice
Allegedly Provided by CitiStreet..............................................................................6

II.    STATE STREET HAS NO DIRECT FIDUCIARY LIABILITY IN ITS ROLE
AS DIRECTED TRUSTEE ...............................................................................................7

III.    STATE STREET HAS NO CO-FIDUCIARY ERISA LIABILITY IN ITS
ROLE AS DIRECTED TRUSTEE ..................................................................................11

IV.    PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW .....................12

    A.    Plaintiffs Fail Adequately To Plead Reliance..........................................................12

    B.    Plaintiffs Fail to Plead Fraud With Particularity .....................................................13

    C.    Plaintiffs Have Not Plead an Actionable Statement in Support of their
Massachusetts Uniform Securities Act Section 410 Claim. ....................................15

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beddall v. State Street Bank & Trust Co.*,
137 F.3d 12 (1st Cir. 1998)..................................................................................................11

*Bunch v. W.R. Grace & Co.*,
532 F. Supp. 2d 283 (D. Mass. 2008) ................................................................................12

*Columbia Air Services, Inc. v. Fidelity Management Trust Co.*,
No. 07-11344-GAO, 2008 WL 4457861 (D. Mass. Sept. 30, 2008).......................................9

*DiFelice v. U.S. Airways, Inc.*,
397 F. Supp. 2d 735 (E.D. Va. 2005) .................................................................................11

*DiFelice v. U.S. Airways, Inc.*
497 F.3d 410 (4th Cir. 2007) ................................................................................................8

*Eckstein v. Balcor Film Investors*,
58 F.3d 1162 (7th Cir. 1995) ................................................................................................4

*Ellis v. Rycenga Homes, Inc.*,
484 F. Supp. 2d 694 (W.D. Mich. 2007) ..............................................................................3

*Falcone v. Pierce*,
864 F.2d 226 (1st Cir. 1988)...............................................................................................12

*Gibbs v. SLM Corp.*,
336 F. Supp. 2d 1 (D. Mass. 2004) ....................................................................................14

*Hecker v. Deere & Co.*,
496 F. Supp. 2d 967 (W.D. Wisc. 2007)..............................................................................9

*Hunt v. Alliance North American Government Income Trust, Inc.*,
159 F.3d 723 (2d Cir. 1998).........................................................................................4, 13

*In re AEP ERISA Litig.*,
327 F. Supp. 2d 812 (S.D. Ohio 2004) ..............................................................................14

*In re RCN Litigation*,
No. 04-5068, 2006 WL 1273834 (D.N.J. March 22, 2006)..................................................12

*In re WorldCom, Inc. ERISA Litig.*,
354 F. Supp. 2d 423 (S.D.N.Y. 2005)............................................................................9, 11

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*,
   76 F.3d 1245 (1st Cir. 1996) ..................................................................4, 5

*Kling v. Fidelity Management Trust Co.*,
   323 F. Supp. 2d 132 (D. Mass. 2004) ...................................................10

*Kuwaiti Danish Comp. Co. v. Digital Equip. Co.*,
   781 N.E.2d 787 (Mass. 2003) ..................................................................12

*Maggio v. Gerard Freezer & Ice. Co.*,
   824 F.2d 123 (1st Cir. 1987) ......................................................................6

*Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc.*,
   62 F. Supp. 2d 236 (D. Mass. 1999) ........................................................12

*Miller v. Countrywide Bank*,
   571 F. Supp. 2d 251 (D. Mass. 2008) ......................................................14

*Miller v. Nationwide Life Insurance Company*,
   391 F.3d 698 (5th Cir. 2004) .............................................................4, 13

*Pearce v. The Duchesneau Group, Inc.*,
   392 F. Supp. 2d 63 (D. Mass. 2005) ........................................................15

*Saxon Theater Corp. v. Sage*,
   200 N.E.2d 241 (Mass. 1964) ..................................................................12

*Stolzoff v. Waste Systems International, Inc.*,
   792 N.E.2d 1031 (Mass. App. 2003) ..........................................................6

*Torchetti v. International Business Machines Corp.*
   986 F. Supp. 49 (D. Mass. 1997) ............................................................14

*Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*,
   524 F.3d 315 (1st Cir. 2008) ......................................................................2

*Venture Inv. Partners, LLC v. JT Venture Partners, LLC*,
   No. 064353, 2007 WL 4098850 (Mass. Super. Ct. Oct. 25, 2007) ..........15

*Ziegler v. Connecticut General Life Insurance Company*,
   916 F.2d 548 (9th Cir. 1990) ......................................................................2

STATUTES

15 U.S.C. § 77j(10)(a)..................................................................................10

29 U.S.C. § 1113 (West 2008)...............................................................................................2, 3, 4

Mass. Gen. Laws ch. 260 § 12..................................................................................................6

**OTHER AUTHORITIES**

17 C.F.R. § 270.30b1-5.............................................................................................................10

Fed. R. Civ. P. 9(b) ..................................................................................................................14

Restatement (Second) of Contracts § 318.................................................................................7

## PRELIMINARY REPLY STATEMENT

In their opposition brief, plaintiffs attempt to avoid dismissal by blurring the allegations of their Complaint as to State Street's role with the F.W. Webb 401(k) Plan (the "Plan").[1]  The Complaint, however, is clear that since April 2000 – when CitiStreet took over as recordkeeper/administrator for the Plan – State Street serviced the Plan exclusively in the limited role of a directed trustee.  And in that limited role, State Street's only obligation was to ensure that the instructions it was given were not contrary to the Plan or to ERISA.  No such instructions are alleged.  As a directed trustee (and even before as a recordkeeper/administrator), State Street had no discretionary authority to make investment choices on behalf of the Plan and no duty to investigate the prudence of the investment decisions of the named fiduciaries.  Consequently, State Street, as a directed trustee, is not liable for any alleged breach of fiduciary duty owed to the Plan, as a matter of law.

Moreover, no applicable statute of limitations reaches back as far as April 2000 and none is tolled.  The publicly filed prospectuses preclude plaintiffs from asserting that any applicable statute of limitations period should be tolled because plaintiffs had constructive notice of the information contained therein.  The prospectuses have made clear to the investing public since plaintiffs first chose to include the Yield Plus Fund in the Plan's investment offerings in 1996 that the Fund was an ultra-short bond fund that invests in mortgage-backed securities.  Moreover, since 1999, the prospectuses explicitly stated that *unlike a Money Market fund* the price of the Yield Plus fund will fluctuate because the fund may invest in securities with higher levels of risk and different maturities.

Plaintiffs have also failed to plead fraud with the requisite particularity.  Plaintiffs allege that State Street misrepresented in 1996 that the Yield Plus Fund "combines the stability of a

---

[1] State Street incorporates by reference the arguments set forth in CitiStreet's reply brief.

money market fund with the potential for a higher return from short-term debt securities"

(Compl. ¶ 27) because in 2000 or 2001, the Yield Plus Fund purportedly began investing in

"high risk, low quality mortgage-backed investments."  Plaintiffs, however, allege no facts to

support their conclusory allegation that the Fund invested in "low quality" securities.  Therefore,

as discussed further below, all of plaintiffs' claims against State Street should be dismissed.

## ARGUMENT

I.   **ALL CLAIMS AGAINST STATE STREET NOT BASED UPON ITS STATUS AS DIRECTED TRUSTEE FOR THE PLAN ARE TIME BARRED**

   A.   **The Facts Necessary to Establish a Time Bar are Evident on the Face of the Complaint**

   All the facts necessary to establish that plaintiffs' claims based on State Street's alleged

investment advice are time barred are clear on the face of the Complaint, and plaintiffs'

opposition presents nothing to the contrary.  *See Trans-Spec Truck Service, Inc. v. Caterpillar*

*Inc.*, 524 F.3d 315, 319-20 (1st Cir. 2008).  By the terms of the Complaint, State Street is only

alleged to have provided investment advice until 2000, and CitiStreet assumed the role as the

plaintiffs' day-to-day contact for the Plan in 2000.  Compl. ¶ 39.  Accordingly, because each

applicable statute of limitations bars claims based on investment advice provided prior to 2000,

there is no question of fact as to whether plaintiffs' claims are time barred.[2]  Memorandum of

Law in Support of State Street's Motion to Dismiss (hereinafter "Mem.") at 2-6.

---

[2] While plaintiffs may not have had a claim for monetary damages until the recent unprecedented financial collapse, this does not mean that their claims did not accrue earlier.  The statue of limitations relevant to plaintiffs' claims calculates time relative to a defendant's "breach or violation," not monetary loss.  29 U.S.C. § 1113 (West 2008). *See Ziegler v. Connecticut General Life Insurance Company*, 916 F.2d 548, 550 (9th Cir. 1990) ("[T]he statute of limitations on ERISA actions such as [plaintiff's] includes no requirement of actual harm.") (interpreting the same statute of limitations applicable to plaintiffs' claims).

### B.     Plaintiffs Mischaracterize Alleged Affirmative Misrepresentations as Omissions

The Complaint alleges that State Street, while serving as the Plan's recordkeeper under the 1997 ASA, misrepresented that the Yield Plus Fund "combines the stability of a money market fund with the potential for a higher return from short-term debt securities" and misrepresented that the Fund would invest in "high quality" securities. *See, e.g.*, Compl. at ¶ 27 and Exh. A.  Plaintiffs now seek to recharacterize these alleged affirmative misrepresentations as *omissions* in order to evade ERISA's statute of limitations period for affirmative acts. Consolidated Memorandum of Law in Opposition to Defendants' Motions to Dismiss (hereinafter "Opp.") at 26-28.  This evasive device should not be allowed.

The relevant portion of the ERISA statute of limitations provides that the statute begins to run in the case of actions (as opposed to omissions) after "the date of the last action which constitutes part of the breach or violation."  29 U.S.C. § 1113 (West 2008).  In the case of omissions, the limitations period begins to run on "the latest date on which the fiduciary could have cured the breach or violation."  *Id.*  Under plaintiffs' reasoning, every alleged bad act would be accompanied by the "omission" of failing to disclose it, and the statute's distinction between acts and omissions would be rendered meaningless.  *See Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694, 714 (W.D. Mich. 2007) ("[M]any plaintiffs attempt to strategically recharacterize their claim from one of affirmative act to one of omission.  The courts generally resist such efforts.").  Accordingly, because plaintiffs have not alleged that State Street provided investment advice to the Plan after 2000, the only relevant allegations relating to State Street concern the 1996 Statements, which are time barred.  Mem. at 2-6.

**C.     Plaintiffs Have No Valid Claim For Any Form of Equitable Tolling**

**1.     The statute of limitations applicable to plaintiffs' ERISA claim is not tolled.**

Plaintiffs incorrectly argue in their opposition that the statute of limitations on their fraud claims is tolled.  Opp. at 28-30.  In order to assert a claim for equitable tolling under ERISA, plaintiffs must have exercised reasonable diligence.  *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996).  Minimal diligence by a mutual fund investor includes reading the fund's prospectus, and thus proof of receipt is not required as a matter of law.[3]  *See Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1169 (7th Cir. 1995) (holding that filing of a prospectus with the SEC provided notice to investors of its contents for purpose of triggering statute of limitations); *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723, 730 (2d Cir. 1998) (holding that minimal diligence requires reading prospectus, described as "the single most important document and perhaps the primary resource an investor should consult in seeking . . . information about the Fund's risks") (quoting *Brown v. E.F. Hutton Group, Inc.*, 9991 F.2d 1020, 1032 (2d Cir. 1993)).  And a prospectus that contradicts alleged oral misrepresentations is sufficient to place plaintiffs on notice that those alleged misrepresentations were false – thereby negating plaintiffs' argument for equitable tolling.[4]  *J. Geils Band*, 76 F.3d at 1250-60; *see also Miller v. Nationwide Life Insurance Company*, 391 F.3d 698, 700 (5th Cir. 2004) (plaintiff had constructive notice of information contained in the prospectus when the prospectus was filed with the SEC – four months before

---

[3] The ERISA statute of limitations distinguishes on its face situations where actual knowledge can be demonstrated, in which case there is only a three year statute of limitations.  29 U.S.C. § 1113 (West 2008).

[4] Plaintiffs cannot escape judicial consideration of the relevant prospectuses by failing to reference them in or attach them to their complaint.  A mutual fund's prospectus is publicly filed with the SEC, and contains SEC mandated information concerning a fund's strategies and risk.  The filing of a prospectus places investors on notice of its contents.  *See Miller*, 391 F.3d at 700; *Eckstein*, 58 F.3d at 1169.

plaintiff even received the prospectus) (citing *Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1169 (7th Cir. 1995) (SEC filings are sufficient to place investors on constructive notice of their contents)).

Moreover, in order to toll a statute of limitations period on the basis of fraud or concealment, a plaintiff must sufficiently allege that "(1) defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of reasonable diligence." *J. Geils*, 76 F.3d at 1255.  Furthermore, plaintiffs bear the burden "to plead with particularity the facts giving rise to the fraudulent concealment claim." *J. Geils*, 76 F.3d at 1255. As described in State Street's motion to dismiss and *infra* at Part IV.A, plaintiffs have not pled fraud with particularity.  *See* Mem. at 15-17.  Therefore, plaintiffs' claim for equitable tolling also fails because they have not alleged specific facts that defendants engaged in a course of conduct designed to conceal the true investment strategy and risk profile of the Yield Plus Fund. Instead, the publicly available prospectuses make clear that State Street described the Yield Plus Fund as "unlike a money market fund," and warned that the "price of the fund may fluctuate because the fund may invest in securities with higher levels of risk and different maturities." Mem. at 4.

> ## 2.  The statutes of limitations applicable to plaintiffs' state law claims are not tolled.

Plaintiffs' argument for tolling the accrual of the statute of limitations on their state law claims fails as well.  Neither the Massachusetts discovery rule nor the Commonwealth's fraudulent concealment doctrine saves the claims against State Street from being time barred. The Massachusetts discovery rule – an exception applied only to "inherently unknowable wrongs" – requires a standard of "reasonable diligence" that has been equated with federal

tolling doctrines. *Maggio v. Gerard Freezer & Ice. Co.*, 824 F.2d 123, 130 (1st Cir. 1987). As described above in the context of their ERISA claim, plaintiffs have failed to meet that burden of reasonable diligence.

The Massachusetts fraudulent concealment doctrine, codified at Mass. Gen. Laws ch. 260 § 12, tolls applicable state statutes of limitations "[i]f a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it." *Id.* Even in cases where a fiduciary relationship exists, tolling applies only where a defendant conceals both "knowledge of the facts giving rise to a cause of action *and the means of acquiring knowledge of such facts*." *Maggio*, 824 F.2d at 131. In other words, a plaintiff must be denied not only knowledge but the means to uncover the true facts. *Id.* Given that the publicly available prospectuses contain disclosures contrary to the alleged misrepresentations, plaintiffs cannot sustain a claim that "the means to uncover the true facts" was withheld.[5]

### D.     State Street is Not Contractually Liable for Any Investment Advice Allegedly Provided by CitiStreet

Plaintiffs also attempt to evade the statute of limitations by asserting that State Street somehow has ongoing contractual liability for CitiStreet's purported investment advice *after* it took over for State Street as the Plan's recordkeeper in 2000. Opp. at 24-26. Yet the contract providing the supposed basis for this assertion – the 1997 ASA – says nothing about the provision of investment advice. Plaintiffs thus seek to saddle State Street with liability for alleged *extra-contractual* actions by CitiStreet after it took over State Street's role under the contract. CitiStreet argues forcefully in its papers why the liability alleged against it under the

---

[5] Plaintiffs' citation to *Stolzoff v. Waste Systems International, Inc.*, 792 N.E.2d 1031 (Mass. App. 2003) is inapposite. The disclosures in that case did not reveal the misappropriation of company funds that were part of the factual basis for the lawsuit, *see id.* at 1037-38, and the court distinguished the facts before it from the situation in which plaintiffs received information that directly contradicted fraudulent misrepresentations – precisely the fact pattern here. *See id.* at 1040 (citing *Bracket v. Perry*, 87 N.E. 903, 904 (Mass. 1909)).

1997 ASA is without basis. *See* Memorandum of Law in Support of ING Institutional Plan Services, LLC's (Formerly CitiStreet, LLC) Motion to Dismiss ("CitiStreet Mem.") at 8-13.[6] But there can be no question that this alleged liability for CitiStreet's post-2000 actions cannot reach back in time to implicate State Street.

Further, both the Restatement section and the interpretive case law cited by plaintiffs (Opp. at 24-25) address the non-performance of services required by a contract[7] – not transferring responsibility for tort or tort-like liability from a successor organization back to its predecessor.[8] *See* Restatement (Second) of Contracts § 318.

## II.   STATE STREET HAS NO DIRECT FIDUCIARY LIABILITY IN ITS ROLE AS DIRECTED TRUSTEE

Since 2000, State Street's only role with respect to the Plan was to serve in the limited capacity of a directed trustee.  In this role, State Street's narrow charge was to execute plaintiffs' instructions, and its fiduciary obligations extended only to ensuring that those instructions were not contrary to ERISA or to the Plan.  Plaintiffs' opposition agrees that only limited fiduciary duties attach to a directed trustee, and plaintiffs concede that any expanded role State Street previously assumed ceased in 2000.  Opp. at 14, 22 & n.12.

---

[6] State Street adopts both the CitiStreet Mem. and CitiStreet's Reply Memorandum ("CitiStreet Reply") in their entirety.

[7] *Howe v. Varity Corporation* involved a corporation transferring retired employees (and responsibility for their contractually required benefits) to another corporation without the retirees' knowledge. 36 F.3d 746, 756 (8th Cir. 1994).  *Security Benefit Life Ins. Co. v. FDIC* involved the non-receipt of payment under an expressly contracted-for annuity.  The responsibilities under the annuity passed through several entities "[a]s a result of a series of transactions."  804 F. Supp 217, 220-21.  The latter case does not even involve ERISA or any other cause of action under which Plaintiffs have brought suit.

[8] The complaint alleges meetings with CitiStreet, services provided by CitiStreet, fees paid by plaintiffs directly to CitiStreet, from 2000 onwards.  *See, e.g.*, Compl. ¶¶ 40-41.  *See also* Compl. ¶ 39 ("CitiStreet continued to provide the same services as *formerly provided by* State Street Bank and SSgA . . . Since, 2000, CitiStreet has provided F.W. Webb with the investment management and recordkeeping/administrative functions *previously provided by* State Street Bank and SSgA") (emphasis added); Compl. ¶ 78 ("In or about 2000, CitiStreet *agreed to and did assume* the contractual obligations to Plaintiffs set forth in the ASA") (emphasis added). These activities took place over a period of seven years.  It is duplicitous for plaintiffs to now suggest that they never agreed to CitiStreet's taking on the duties formerly provided by State Street and that State Street remained responsible for the performance of duties under the 1997 ASA.

Recognizing that this arrangement would ordinarily preclude State Street's liability for the recent underperformance of plaintiffs' investments, plaintiffs nonetheless offer a number of arguments for ERISA liability. Plaintiffs assert for the first time in their opposition – without mention in the Complaint – that State Street purportedly violated its directed-trustee duties by executing instructions that were contrary to the Plan or to ERISA. Plaintiffs also argue that State Street may be held to a much higher fiduciary standard regarding investment selection, prudence, and disclosures because: (1) State Street exercised discretionary control with respect to the Plan, (2) State Street previously acted as a *de facto* investment advisor fiduciary prior to 2000, or (3) State Street's Trust Agreement obligated it to undertake additional fiduciary duties. These arguments have no merit.

Plaintiffs' assertion in its opposition that State Street executed instructions contrary to the Plan or to ERISA (Opp. at 23) fails at the outset because no facts supporting it were alleged in the complaint. Even the opposition does not allege specific facts to support such a claim; the closest plaintiffs come is to contend that the Plan's investment in the Yield Plus Fund may not have satisfied the guidelines set forth in ERISA § 404(c). *Id.* But Section 404(c) is a safe harbor provision,[9] not an ERISA requirement. Plaintiffs' allegations in this regard boil down to the untenable claim that the investment instructions State Street followed were contrary to ERISA or the Plan simply because the investment was, in plaintiffs' hindsight, imprudent.

Plaintiffs' argument that State Street took on a discretionary fiduciary role simply by offering the Yield Plus Fund as one of many options from which plaintiffs could choose runs contrary to law and to plaintiffs' own factual allegations. *See* Compl. at 10. As the chart on page 10 of the Complaint makes vividly clear, plaintiffs exercised the final, unilateral

---

[9] *See, e.g., DiFelice v. U.S. Airways, Inc.* 497 F.3d 410, 418 n.3 (4th Cir. 2007) (explaining the 404(c)'s "safe harbor" provision serves to "*limit*[] the liability of fiduciaries" in some instances).

discretionary authority by checking the box to select the Yield Plus Fund but not selecting the

money market fund offered by State Street.  Courts have rejected the notion that a trustee may be

held liable merely because it presented investment options from which plaintiffs ultimately

selected.[10]  *See, e.g.*, *Columbia Air Services, Inc. v. Fidelity Management Trust Co.*, No. 07-

11344-GAO, 2008 WL 4457861, at *5 (D. Mass. Sept. 30, 2008) (no discretionary fiduciary duty

in connection with offering funds for ERISA plan to chose); *Hecker v. Deere & Co.*, 496 F.

Supp. 2d 967, 977 (W.D. Wisc. 2007) (same).

Indeed, plaintiffs themselves offer the express disclaimer that they "are not asserting that

State Street had a generalized duty to second-guess fund selections."  Opp. at 22 n.12.

Nevertheless, plaintiffs assert elsewhere that State Street may be held liable for executing

instructions that were in some fashion "imprudent."  Opp. at 22.  The primary authority relied

upon by plaintiffs in this regard, however, exemplifies why such a generalized heightened

fiduciary standard is inapplicable to a directed trustee.  The court in *In re WorldCom, Inc. ERISA*

*Litig.*, 354 F. Supp. 2d 423 (S.D.N.Y. 2005), held that Merrill Lynch as a directed trustee had no

duty to investigate the prudence of the Plan's instruction to invest in company stock:

> [h]aving considered the prevailing law . . . it is possible to describe the
> standard that applies to trustees when they receive directions to invest in
> particular securities.  The choice of investment options remains in the
> hands of the named investment fiduciary.  A directed trustee has no duty
> to investigate the wisdom of those choices or any obligation to render
> advice regarding the choices.

*Id*. at 449.  In the mutual fund context, of course, all information about the fund's holdings,

---

[10]  Plaintiffs' allegations fail on this ground even within the narrow context of the ERISA fee-arrangement cases on
which plaintiffs rely.  *See, e.g.*, *Columbia Air Services, Inc.*, 2008 WL 4457861, at *5.  But plaintiffs' reliance on
fee-arrangement cases is misplaced on an even more basic level.  At issue in ERISA fee-arrangement cases is a
fiduciary's discretion with respect to setting its own compensation and whether it has breached its duty by setting or
collecting improper fees.  *See, e.g.*, *id.*  Those cases do not purport to address whether a trustee that presents
investment fund options to a plan may somehow be held liable for any downturns in the performance of one of those
funds some 12 years after the plan initially selects it.

strategies, and risks is publicly available and filed with the SEC.  *See, e.g.*, 17 C.F.R.

§ 270.30b1-5 (requiring registered funds to file quarterly holdings schedules); 15 U.S.C.

§ 77j(10)(a) (requiring registered funds to set forth information in a prospectus).  State Street

simply had no duty to second-guess plaintiffs' investment instructions in this case based on the

information available.

Adopting a different tack, plaintiffs then posit that State Street breached its duty as

directed trustee on the basis of alleged representations made twelve years earlier regarding the

Yield Plus Fund.  In this regard, plaintiffs attempt to distinguish *Kling v. Fidelity Management

Trust Co.*, 323 F. Supp. 2d 132 (D. Mass. 2004), which precluded liability for a directed trustee

on the basis of non-disclosures.  Significantly, plaintiffs do not argue that any alleged advice

provided by State Street in 1996 with respect to the Yield Plus Fund was inaccurate or imprudent

*at the time it was made*.  Rather, plaintiffs argue (without citation to authority) that State Street

as a directed trustee in 2007 retained special disclosure duties not applicable to "ordinary"

directed trustees by virtue of investment advice it allegedly provided some twelve years earlier.

This novel argument again overlooks the fact that the very information allegedly obscured or not

disclosed – that the Yield Plus Fund was not a money market fund and invested in mortgage-

backed securities – had in fact already been disclosed repeatedly in annual public filings for

many years.

Further, both § 3.1 and § 3.6 of the Trust Agreement include language that State Street

"shall have no liability for any loss of any kind . . . for the investment management of these

accounts," except in the case of trustee-managed accounts, and that State Street "shall not incur

any liability on account of following any direction of the Client or the Recordkeeper and the

Trustee shall be under no duty to review the investment guidelines, objectives and restrictions so

established." Skinner Decl. ¶ 10, Exh. I at § 3.1. Plaintiffs' argument that State Street served as investment manager with respect to two unrelated "Life Solutions" funds is a red herring. *See* Opp. at 19. Plaintiffs nowhere allege that State Street served as investment manager with respect to the Yield Plus Fund – the only fund at issue in this litigation. Consequently, State Street is entitled to the broad protections afforded in the Trust Agreement, and plaintiffs' ERISA claims fail for the same reasons outlined by the court in *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12 (1st Cir. 1998) (dismissing claims against State Street as a directed trustee where the Trust Agreement provided that it was not liable for the monitoring the plaintiffs investments).

## III.   STATE STREET HAS NO CO-FIDUCIARY ERISA LIABILITY IN ITS ROLE AS DIRECTED TRUSTEE

State Street cannot be held liable as an ERISA co-fiduciary to CitiStreet under Section 405(a) for many of the same reasons that it cannot be liable under ERISA directly. The crux of plaintiffs' co-fiduciary argument is that State Street failed to step in when, based on advice allegedly received from CitiStreet, plaintiffs directed State Street to make investments that plaintiffs now view as imprudent. Directed trustees are not liable for this type of nonfeasance under ERISA. *See, e.g., In re WorldCom, Inc ERISA Litig.*, 354 F. Supp. 2d 423 (S.D.N.Y. 2005). Nevertheless, plaintiffs assert that State Street is purportedly liable for this same conduct as a co-fiduciary under Section 405(a). However, courts examining this issue have recognized that holding a directed trustee liable for acts of co-fiduciaries that are outside the scope of its own limited duty would defeat the statutorily limited scope of a directed trustee's liability. *DiFelice v. U.S. Airways, Inc*., 397 F. Supp. 2d 735, 757 (E.D. Va. 2005) ("A limitation on a directed trustee's duties under ERISA § 403(a) would have little effect if the directed

trustee's co-trustee liability was not similarly limited"); *In re RCN Litigation*, No. 04-5068, 2006 WL 1273834, at *7-8 (D.N.J. March 22, 2006) (same).  Again, plaintiff's theory must fail.[11]

## IV.    PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW

### A.    Plaintiffs Fail Adequately To Plead Reliance

Plaintiffs' claims for fraud and negligent misrepresentation fail as a matter of law because plaintiffs cannot establish reasonable reliance on the alleged misrepresentations or omissions as a matter of law.  *See, e.g., Kuwaiti Danish Comp. Co. v. Digital Equip. Co.*, 781 N.E.2d 787, 795-97 (Mass. 2003); *Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 241-42 (D. Mass. 1999) (citing *Saxon Theater Corp. v. Sage*, 200 N.E.2d 241, 244-45 (Mass. 1964)).  Contrary to plaintiffs' assertions, courts routinely make such determinations pursuant to a motion to dismiss.  *See e.g., Saxon Theater Corp.,* 200 N.E.2d at 244-45 (sustaining demurrer where reliance on alleged false representations would not have been reasonable); *Falcone v. Pierce*, 864 F.2d 226, 230-31 (1st Cir. 1988) (dismissing complaint because reliance on alleged misrepresentation was unreasonable as a matter of law); *Massachusetts Laborers' Health & Welfare Fund*, 62 F. Supp. 2d at 241-42 (dismissing fraud, negligent misrepresentation and unfair and deceptive trade practices claims because reliance could not have been reasonable).

Plaintiffs' reliance on the alleged 1996 statements and defendants' alleged failure to disclose that the Fund was not tantamount to a money market fund (*see, e.g*., Compl. ¶¶ 40, 48 and 53) is unreasonable as a matter of law because the written statements in the Fund's

---

[11] Plaintiffs have also failed to adequately plead the threshold requirement of co-fiduciary liability under ERISA— an independent breach of fiduciary duty by a principal fiduciary.  *See Bunch v. W.R. Grace & Co.*, 532 F. Supp. 2d 283, 292 (D. Mass. 2008) ("co-fiduciary liability may only lie under . . . ERISA if another fiduciary committed a breach") (citation omitted).  Plaintiffs have failed to adequately plead a breach of any such duty by CitiStreet.  *See See* CitiStreet Mem.; CitiStreet Reply.  Accordingly, Plaintiffs' attempt to bootstrap an ERISA claim against State Street based on CitiStreet's alleged breach of any fiduciary duty must be rejected.

prospectuses identify:  (i) that the Yield Plus Fund is a bond fund, (ii) that the Yield Plus Fund is not a money market fund, (iii) the ways in which the Yield Plus Fund differs from a money market fund, and (iv) that the Fund invests in asset-backed and mortgage-backed securities.[12] Mem. at 13.  Plaintiffs had constructive notice of the information contained in the Fund's prospectuses, which were filed with the SEC.  *See Miller v. Nationwide Life Insurance Company*, 391 F.3d 698, 700 (5th Cir. 2004) (finding that plaintiff had constructive notice of information contained in prospectus when the prospectus was issued – four months before plaintiff received that prospectus) (citing *Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1169 (7th Cir. 1995) (finding that SEC filings are sufficient to place investors on constructive notice of their contents)).  Moreover, "[a]n investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth."  *Hunt v. Alliance N. American Gov. Income Trust Inc.*, 159 F.3d 723, 730 (2d Cir. 1998).  Minimal diligence includes consulting a fund's prospectus.  *See id.*  Accordingly, to the extent plaintiffs did not consult any prospectus for the Fund, plaintiffs failed to perform the minimal diligence needed to ascertain that the Yield Plus Fund is a bond fund, not a money market fund; any reliance on an alleged statement to the contrary is unreasonable as a matter of law.  *Id.*; *see also* Mem. at 13.

### B.     Plaintiffs Fail to Plead Fraud With Particularity

Plaintiffs' allegations that State Street misrepresented that the Yield Plus Fund "combines the stability of a money market fund with the potential for a higher return from short-term debt securities" and misrepresented that the Fund would invest in "high quality" securities because

---

[12] Although plaintiffs point out that the prospectuses for the Yield Plus Fund issued between 2002 and 2005 omitted the specific language that the Yield Plus Fund was "not a money market fund" (Opp. at 10), plaintiffs fail to acknowledge that those same prospectuses included functionally identical language stating that "unlike a money market fund, the price of the Yield Plus Fund will fluctuate because the fund may invest in securities with higher levels of risk and different maturities."  *See* Skinner Decl. ¶¶ 2, 7-9, Exhs. A at 5 (2005 Prospectus), F at 5-6 (2002 Prospectus), G at 4 (2003 Prospectus), and H at 5 (2004 Prospectus).

the Fund purportedly changed to investing in "low quality subprime mortgage-backed securities" (Opp. at 1, 8-9) are deficient because they are not supported by specific factual allegations in the Complaint. *Miller v. Countrywide Bank*, 571 F. Supp. 2d 251, 264 (D. Mass. 2008) (finding that Fed. R. Civ. P. 9(b) is not satisfied where allegations do not explain how the actual state of facts was misrepresented.) Plaintiffs provide no factual allegations concerning the alleged "dramatically" changed investment strategy. Opp. at 1. In fact, plaintiffs fail to provide any factual allegations to support the unsubstantiated conclusion that, beginning in 2000 or 2001, the Yield Plus Fund did not invest in "high quality," "investment grade" securities. *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 9 (D. Mass. 2004) (although a plaintiff's pleadings are afforded substantial deference in reviewing a motion to dismiss, "each general allegation must be supported by a specific factual basis" and a court need not credit unsubstantiated conclusions or subjective characterizations). Plaintiffs have not alleged (i) the credit ratings for the Fund's investments – or any other metric for assessing an investment's risk – that plaintiffs contend are "high-risk" and "low-quality," or (ii) how those investments constitute a change in the investment strategy for the Fund. As plaintiffs point out, not all mortgage-backed securities are created equal, but they fail to allege which mortgage-backed securities were not "high quality," investment grade securities. Accordingly, plaintiffs' fraud and breach of fiduciary duty claim should be dismissed for failure to plead fraud with particularity.[13]

---

[13] Plaintiffs contend that Rule 9(b)'s heighted pleading standard does not apply to its breach of fiduciary duty claim and rely on *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 821 (S.D. Ohio 2004). Opp. at 12. That reliance is misplaced. In the First Circuit, an ERISA breach of fiduciary duty claim that stems from an alleged fraud must also be pled with particularity. *See Torchetti v. International Business Machines Corp.* 986 F. Supp. 49, 51 (D. Mass. 1997). *See* Mem. at 15 n.14 (collecting cases).

**C.     Plaintiffs Have Not Plead an Actionable Statement in Support of their Massachusetts Uniform Securities Act Section 410 Claim.**

To plead a violation of Massachusetts Uniform Securities Act Section 410 ("Section 410") a plaintiff must allege that "(1) the defendant offers or sells a security; (2) in Massachusetts; (3) by making any untrue statement of a material fact or by omitting to state a material fact; (4) the plaintiff did not know of the untruth or omission; and (5) the defendant knew, or in the exercise of reasonable care would have known, of the untruth or omission." *Pearce v. The Duchesneau Group, Inc*., 392 F. Supp. 2d 63, 76 (D. Mass. 2005) (internal quotations and brackets omitted).   "A claim under section 410(a)(2) necessarily, in view of the statute's express language, focuses on misrepresentations and/or omissions made in . . . connection with the offering and sale, not thereafter."  *See, e.g., Venture Inv. Partners, LLC v. JT Venture Partners, LLC*, No. 064353, 2007 WL 4098850, at *2 (Mass. Super. Ct. Oct. 25, 2007). Plaintiffs chose to include the Yield Plus Fund on the Plan's investment menu in 1996.   Compl. at ¶¶ 29-30.   Accordingly, the purported omissions that are alleged to have occurred beginning in 2000 or 2001 are not relevant to plaintiffs' Section 410 claim.   Therefore, plaintiffs' claim for violation of Section 410 necessarily fails because plaintiffs have not alleged that the 1996 Statements were false when made.  *See* Mem. at 15.

**<u>CONCLUSION</u>**

For the foregoing reasons, State Street respectfully requests that the Court enter an order

dismissing the Complaint in its entirety.

Dated:  January 12, 2008

Respectfully submitted,

ROPES & GRAY LLP

By: /s/ Harvey J. Wolkoff
Harvey J. Wolkoff (BBO# 532880)
Robert A. Skinner (BBO# 567862)
Jeffrey P. Palmer (BBO# 669479)
One International Place
Boston, MA  02110
Tel: (617) 951-7000
Fax: (617) 951-7050
harvey.wolkoff@ropesgray.com
robert.skinner@ropesgray.com
jeff.palmer@ropesgray.com

*Attorneys for Defendants State Street Bank
and Trust Company and State Street Global Advisors*

11474940_2.DOC

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to all registered participants.

/s/ Jeffrey P. Palmer
Jeffrey P. Palmer